IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH THOMAS; VERNON AYERS; and MELVIN LAWSON;<br><br>   Plaintiffs,<br><br>v.<br><br>PHIL BRYANT, Governor of the State of Mississippi; DELBERT HOSEMANN, Secretary of State of the State of Mississippi; and JIM HOOD, Attorney General of of the State of Mississippi, all in the official capacities of their own offices and in their official capacities as members of the State Board of Election Commissioners,<br><br>   Defendants. | Civil Action<br>No. 3:18cv441-CWR-FKB |

**FIRST AMENDED COMPLAINT**

**I. INTRODUCTION**

1. This is a challenge under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("Section 2"), to the boundary lines of Mississippi State Senate District 22, which dilute African-American voting strength and deprive African-American voters of an equal opportunity to elect candidates of their choice.  That district was utilized in the 2015 legislative elections and will be used again in the 2019 legislative elections unless enjoined by this Court.  Absent such an injunction, the violation of Section 2 of the Voting Rights Act will be perpetuated until the subsequent election in 2023. The district can easily be redrawn to cure the Section 2 violation by modifying it and one or two adjacent districts.  The Plaintiffs seek declaratory and injunctive

relief so that the 2019 election from State Senate District 22 can be held from a plan that complies with the Voting Rights Act.

## II.    THE PARTIES

**The Plaintiffs**

2.      Plaintiff Joseph Thomas is an African-American resident and registered voter of Yazoo County. He resides and votes in Mississippi Senate District 22. He was a candidate in 2015 in the general election for Mississippi Senate District 22. He was supported by the vast majority of African-American voters but nevertheless was defeated by the white candidate as a result of white bloc voting against him. Because of the violation of Section 2 of the Voting Rights Act alleged in this complaint, he and other African-American voters in the district do not have an equal opportunity to elect candidates of their choice.

3.      Plaintiff Vernon Ayers is an African-American resident and registered voter of Washington County. He resides and votes in Mississippi Senate District 22. Because of the violation of Section 2 of the Voting Rights Act alleged in this complaint, he and other African-American voters in the district do not have an equal opportunity to elect candidates of their choice.

4.      Plaintiff Melvin Lawson is an African-American resident and registered voter of Bolivar County. He resides and votes in Mississippi Senate District 22. Because of the violation of Section 2 of the Voting Rights Act alleged in this complaint, he and other African-American voters in the district do not have an equal opportunity to elect candidates of their choice.

**The Defendants**

5. Defendant PHIL BRYANT is the Governor of the State of Mississippi and is sued in his official capacity. The Governor is the State's chief executive officer. MISS. CONST. art. 5, § 116.

6. Defendant DELBERT HOSEMANN is the Secretary of State of the State of Mississippi and is sued in his official capacity. The Secretary of State is the State's chief election officer and is responsible for administering elections in the State of Mississippi. MISS. CODE ANN. § 23-15-211.1.

7. Defendant JIM HOOD is the Attorney General of the State of Mississippi and is sued in his official capacity. The Attorney General is the State's chief law enforcement officer.

8. The Governor, the Secretary of State, and the Attorney General comprise the State Board of Election Commissioners of the State of Mississippi. MISS. CODE ANN. § 23-15-211. As such, they are responsible for implementing and enforcing Mississippi's election laws.

### III.  JURISDICTION

9. This Court has jurisdiction of this action pursuant to (1) 28 U.S.C. § 1343(a), because this action seeks to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Voting Rights Act; and (2) 28 U.S.C. § 1331, because this action arises under the laws of the United States.

10. This Court has jurisdiction to grant both declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

11. This Court has personal jurisdiction over the Defendants, all of whom are citizens of the State of Mississippi.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.    FACTS AND BACKGROUND

13.    Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), prohibits any "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." A violation of Section 2 is established if it is shown that "the political processes leading to nomination or election" in the jurisdiction "are not equally open to participation by [a minority] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* at § 10301(b). An electoral regime that dilutes the voting strength of a minority community deprives the members of that community of their right to an equal opportunity to elect representatives of their choice within the meaning of Section 2.

14.    The State of Mississippi is at least 35% African-American in voting age population. However, only 25% of the members of the Mississippi Senate --- 13 of 52 --- are African-American.

15.    In one of the State Senate districts, District 22, African-American voters have been unable to elect candidates of their choice because of white bloc voting. African Americans make up a very slim majority of the voting age population (50.8 percent) of District 22, but it is what the Supreme Court has called a "majority [that] lack[s] real electoral opportunity." *LULAC v. Perry,* 548 U.S. 399, 428 (2006). The lack of opportunity is the result of white bloc voting and lower African-American turnout that are vestiges of the historical discrimination and extreme socio-economic disparities that have been inflicted upon African-Americans over a long period of time.

**District 22 Geography and Demographics**

16. Senate District 22 is located in the western part of the state and stretches across parts of six counties: Bolivar, Humphreys, Madison, Sharkey, Washington, and Yazoo. Only Sharkey County is entirely in District 22.

17. The district is one of largest in the state: it stretches over 100 miles from northwest to southeast, from the heart of the Mississippi Delta to Madison County's northern suburbs of Jackson. Only one other Senate district is longer (the 38th district).

18. District 22 both contains some very poor African-American areas, but also some very wealthy white areas in the southern portion of Madison County. The addition of those predominantly white areas from Madison County helps to limit the district's black voting age population to the present level of 50.8%, which combines with white bloc voting and lower African-American turnout to dilute African-American voting strength in the district.

**Mississippi's Legislative Elections**

19. The Mississippi Legislature is a bicameral legislature, made up of a 52-member Senate and a 122-member House of Representatives. The legislators serve four-year terms.

20. There is a majority vote requirement for Mississippi's primary elections. Miss. Code Ann. § 23-15-305. If no candidate receives a majority of the vote, then the State holds a runoff election between the top two candidates. *Id.*

21. The candidate who receives the most votes wins general elections. Miss. Code Ann. § 23-15-605.

22. Mississippi's elections for most state and county offices occur every four years in odd numbered years. The most recent Senate election was in 2015 and the next election is in 2019. The current redistricting plan for State Senate elections, including the plan for District 22, has only been used for one election (in 2015) and is scheduled to be used in one more (in 2019).

**Voting Patterns**

23. A white Republican, Eugene Clark, has represented the district for the past 15 years, having been elected four times. He has been elected each time as the result of white bloc voting while the vast majority of African-American voters has always supported his opponent. In these elections, African-American residents of District 22 consistently have lower participation rates than the District's white residents.

24. In 2003, Clark defeated the next top vote getter, Mala Brooks, a black Democrat, by 9,004 votes (55.7%) to 5,288 (32.7%), while a black independent, Mark Crawford, received 1870 votes (11.6%).

25. In 2007, Clark defeated Sandra Jaribu Hill, a black Democrat, by 7,266 votes (58.7%) to 5,116 (41.3%).

26. In 2011, Clark beat George Hollowell, a white Democrat, by 7,033 votes (53.9%) to 6,021 (46.1%).

27. In 2015, Clark beat Joseph Thomas, a black Democrat, by 8,149 votes (53.8%) to 6,985 (46.2%).

28. African-American voters in District 22 are politically cohesive, having voted overwhelmingly for a single candidate of choice over other candidates in recent elections.

29. Past elections in Mississippi, particularly in District 22 and its surrounding area, have been marked by a clear pattern of racially polarized voting. As demonstrated by the election results, the consistent patterns of bloc voting, and the turnout differentials, District 22 as currently configured does not give African-American voters an equal opportunity to elect candidates of their choice. Although African-American voters are politically cohesive, bloc

voting by white citizens in District 22 consistently defeats the candidates preferred by African-Americans in these elections.

**The Ability to Draw a Fair District**

30. If District 22 had a significantly increased black voting age population, African-American voters would have an equal opportunity to elect candidates of their choice. The African-American population in District 22 and adjacent areas is such that District 22 could be redrawn with a black voting age population of approximately 60% rather than the existing 50.8%. Such a district could be redrawn with changes only to one or two adjacent districts so that the vast majority of Mississippi's senate redistricting plan would remain unaltered. The resulting districts would be more compact than the current redistricting plan. This alteration would cure the Section 2 violation in District 22, and it would not create Voting Rights Act violations in any other districts.

**Totality of the Circumstances**

31. There is a lengthy and documented history of voter discrimination against African-Americans in Mississippi. Federal Courts have long acknowledged this history and found that Mississippi has violated federal voting rights protections. E.g., United States v. Mississippi, 380 U.S. 128, 131-36 (1965) (detailing the history of racially discriminatory election practices in Mississippi); Young v. Fordice, 520 U.S. 273, 291 (1997) (finding that Mississippi violated Section 5 of the Voting Rights Act when the State altered its registration procedure without seeking preclearance); Allen v. State Board of Elections, 393 U.S. 544, 571 (1969) (holding that Mississippi violated Section 5 of the Voting Rights Act when it did not seek federal approval before enforcing a new election law); Mississippi State Chapter, Operation PUSH, Inc. v. Mabus, 932 F.2d 400, 402 (5th Cir. 1991) ("Mississippi has a long history of using voter

qualifications and registration procedures to impede black citizens' participation in the political process."); Martin v. Allain, 658 F. Supp. 1183, 1192 (S.D. Miss. 1987) ("Mississippi has a long history of official discrimination touching on the right of black citizens to vote and participate in the democratic process."); Jordan v. Winter, 604 F. Supp. 807, 811-12 (N.D. Miss. 1984) ("Mississippi's long history of de jure and de facto race discrimination is not contested.").

32. African-Americans in Mississippi and in District 22 generally bear the effects of discrimination in areas such as education, employment, and health, and generally lag behind white residents in those areas. The history of discrimination and these socioeconomic disparities have hindered their ability to participate in the political process, and African Americans participation is lower than white participation in District 22. Mississippi's elections for most state and local offices are held in odd-numbered non-presidential election years, which means turnout is much lower than in presidential election years.

33. Historically and up to the present day, racially polarized voting has infected elections throughout Mississippi, particularly when African-American candidates are running against white candidates.

34. No African-American candidate has ever been elected to statewide office in Mississippi in the Twentieth Century. African-Americans are under-represented in the Mississippi legislature compared to their proportion of the general population. Although the State is 35% African-American in voting age population, only 13 of 52 (25%) Mississippi state senators are African-American. No African-American has been elected to the Mississippi Senate from a majority white district except Eric Powell, who was elected from District 4 in 2007, but subsequently was defeated in 2011 when he ran as an incumbent and was defeated again when he ran for the same seat again in 2015. Otherwise, no African-American has been elected to the

Mississippi Senate in a district with an African-American voting age population of the level of District 22, which is 50.8% black. An African-American candidate was elected to the Mississippi Senate from District 34, which is 55.1%. All others presently serving are from districts at least 61% African-American.

## V.   VIOLATION

35.   Plaintiffs repeat and re-allege each allegation contained in the foregoing paragraphs of this complaint.

36.   As set forth in this complaint, African-American voters in District 22 are politically cohesive, and white bloc voting has prevented them from electing candidates of their choice. The district can easily be modified to give African-American voters an equal opportunity to elect candidates of their choice. This can occur with changes to only one or two adjacent districts, leaving the remainder of the Senate plan untouched.

37.   The totality of the circumstances establishes that the current districting plan has the effect of denying African-American voters an equal opportunity to elect representatives of their choice, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

38.   One election was held under this plan in 2015. Unless enjoined by this Court, another will be held in 2019, thus perpetuating the Section 2 violation until 2023.

## VI.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that the Court:

a.   Declare that the current districting plan violates Section 2 of the Voting Rights Act;

b.   Enjoin Defendants, their agents and successors in office, and all persons acting in concert with them, from administering, implementing, or conducting any future elections in Mississippi State Senate District 22 under the current districting plan;

   c.  Provide state officials with the opportunity to enact a new districting plan for District 22 that complies with Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

   d.  Order the implementation of a new districting plan for District 22 that complies with Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

   e.  Award Plaintiffs their reasonable attorneys' fees, pursuant to statute, and the costs and disbursements of maintaining this action; and,

   f.  Order such additional relief as the interests of justice may require.

July 25, 2018                     Respectfully submitted,

| | |
|---|---|
| *s/ Beth L. Orlansky* | *s/ Robert B. McDuff* |
| BETH L. ORLANSKY, MSB 3938 | ROBERT B. MCDUFF, MSB 2532 |
| MISSISSIPPI CENTER FOR JUSTICE | 767 North Congress Street |
| P.O. Box 1023 | Jackson, MS 39202 |
| Jackson, MS 39205-1023 | (601) 969-0802 |
| (601) 352-2269 | rbm@mcdufflaw.com |
| borlansky@mscenterforjustice.org | *Lead Counsel* |
| | |
| KRISTEN CLARKE | ELLIS TURNAGE, MSB 8131 |
| JON GREENBAUM | TURNAGE LAW OFFICE |
| EZRA D. ROSENBERG | 108 N. Pearman Ave |
| ARUSHA GORDON | Cleveland, MS 38732 |
| LAWYERS'COMMITTEE FOR CIVIL | (662) 843-2811 |
| RIGHTS UNDER LAW | eturnage@etlawms.com |
| 1401 New York Ave., NW, Suite 400 | |
| Washington, D.C. 20005 | PETER KRAUS |
| (202) 662-8600 | CHARLES SIEGEL |
| erosenberg@lawyerscommittee.org | CAITLYN SILHAN |
| agordon@lawyerscommittee.org | WATERS KRAUS |
| | 3141 Hood Street, Suite 700 |
| *PHV applications to be filed* | Dallas, TX 75219 |
| | (214) 357-6244 |
| | pkraus@waterskraus.com |
| | csiegel@waterskraus.com |
| | csilhan@waterskraus.com |
| | *Admitted Pro Hac Vice* |
| | |
| | *Attorneys for Plaintiffs* |

10

## **CERTIFICATE OF SERVICE**

I, Robert B. McDuff, hereby certify that on July 25, 2018 I electronically filed a copy of the First Amended Complaint with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record. Additionally, the foregoing was served by email and hand delivery on:

Harold Pizzetta
Office of the Attorney General
Sillers Building
550 High Street
Jackson, MS 39201

                                                s/Robert B. McDuff