IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOSEPH THOMAS, et al,

      Plaintiffs

vs.                             Civil Action No. 3:18cv441-CWR-FKB

PHIL BRYANT, Governor of
Mississippi, et al.,

      Defendants.

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Contrary to the Defendants' contention [Doc. 20 at 1], this case was not filed "on the eve of the [2019] statewide legislative elections." It was filed nearly thirteen months prior to the August 6, 2019 primary election. Nor was it filed "just prior to the redistricting process commencing once again in 2020." [Doc. 20 at 1-2]. Instead, the legislature will not draw the redistricting plan for the 2023 elections until 2021 or 2022, after the 2020 census data is available. It is not a challenge to the entire statewide redistricting plan, but challenges the validity of only one of the 52 state senate districts in Mississippi. That district has been used in only one prior election cycle. The violation can be remedied by redrawing that district and one other. If the Court concludes that this district violates Section 2 of the Voting Rights Act, a remedy can be implemented in time for the 2019 legislative elections. Otherwise, it will be 2023 before an election is held that will cure the violation.

As set forth in the remainder of this memorandum, this is not a case in which the statute of limitations or the doctrine of laches should be applied to dismiss the claim of racial vote dilution regarding Senate District 22. Further, the Mississippi State Board of Election

Commissioners, along with the executive officials that are members of that body (the Governor, Secretary of State, and Attorney General), are proper defendants here, just as they have been proper defendants in many other cases involving state-level redistricting in Mississippi, and there are no other necessary parties that the Plaintiffs are required to add.

I. **BECAUSE THE VOTING RIGHTS ACT VIOLATION THAT EXISTS HERE IS AN ONGOING VIOLATION, THIS CASE IS NOT BARRED BY THE STATUTE OF LIMITATIONS.**

The Defendants do not cite a single instance when a redistricting case was dismissed because it was time-barred based on a statute of limitations. That is because, by their very nature, constitutional and statutory violations embedded in redistricting plans --- such as racial vote dilution that contravenes the Voting Rights Act --- are ongoing violations. Those violations continue through each election held under an unlawful plan, and they persist until public officials take office who are chosen in elections held pursuant to different plans that remedy the violations. This was explained by the three-judge district court for the Eastern District of Arkansas when rejecting the defendants' contention that the redistricting challenge involving an Arkansas State Senate district was barred by limitation and laches:

> The defendants suggest that the plaintiffs are barred because of the passage of time since the State Board of Apportionment formulated the present state-wide plan in 1981. The necessary premise of this argument is that unless voters challenge an apportionment plan promptly upon its being put into effect, they are barred from contesting a district until a subsequent reapportionment. We conclude that neither the doctrine of laches nor the expiration of an applicable limitations period presents an obstacle to the plaintiffs' case under the Voting Rights Act. First, *the injury alleged by the plaintiffs is continuing, suffered anew each time a State Representative election is held under the [illegal] structure.*

*Smith v. Clinton,* 687 F. Supp. 1310, 1313 (E.D. Ark. 1988) (footnote omitted, emphasis added), *aff'd mem.* 488 U.S. 988 (1988).

For the same reason, the court rejected a statute of limitations defense in *Blackmoon v. Charles Mix County,* 386 F. Supp. 2d 1108 (D.S.D. 2005). The court stated: "[E]ach time an election occurs with the current boundaries for commissioner districts, Plaintiffs suffer an alleged injury." *Id.* at 1115.

The Plaintiffs' claim in the present case is that the use of the current lines for Senate District 22 in the 2019 election will violate Section 2 of the Voting Rights Act. That is a continuing violation and this case is not barred by the statute of limitations.[1]

## II. THE RARE CIRCUMSTANCES WHERE COURTS HAVE DISMISSED REDISTRICTING CASES ON LACHES GROUNDS DO NOT APPLY HERE

As just mentioned, racial vote dilution in a redistricting plan constitutes an ongoing violation of the Voting Rights Act that continues through each election held under a discriminatory plan. For this reason and others, courts have rarely dismissed redistricting cases on laches grounds. When they have dismissed cases on laches grounds, the cases involve circumstances not present here.

The passage quoted in the prior section of this brief from a three-judge district court for the Eastern District of Arkansas in *Smith v. Clinton,* when rejecting both a limitations and a laches defense, was reiterated in that same district when rejecting the doctrine of laches in another legislative redistricting case: "[T]he injury alleged by the plaintiffs is continuing, suffered anew each time a State Representative election is held under the [illegal] structure." *Jeffers v. Clinton,* 730 F. Supp. 196, 202 (E.D. Ark. 1989), *aff'd mem.* 498 U.S. 1019 (1991), *quoting Smith v. Clinton,* 687 F. Supp. at 1313.

---

[1] In the context of Section 5 of the Voting Rights Act, the three-judge district court in *Dotson v. Indianola,* 514 F. Supp. 397, 401 (N.D. Miss. 1980), *aff'd mem.* 456 U.S. 1002 (1982) assumed without deciding that if a statute of limitations applied, it would begin running from the most recent election in which the challenged scheme had been utilized. The most recent election from the current Senate District 22 was in November 2015, and this case was filed in July of 2018, which would satisfy the three-year statute of limitations that the Defendants claim applies here.

3

In *Jeffers,* the court's December 4, 1989 opinion rejected the defendants' laches argument and held that the Arkansas legislative redistricting plan of 1981 violated Section 2 and required an extensive redrawing of legislative districts prior to the 1990 election. 730 F. Supp. at 198, 202. The opinion contains a lengthy discussion of the issue of laches, which includes the following description of a court's task when faced with a laches argument: "The Court must weigh the facts and interests on both sides, summon up the discretion of a chancellor, remember that it is a court of conscience and not of legal stricture, and come as close as it can to a fair result." 730 F Supp. at 202. The court noted that the plaintiffs' claims in *Jeffers* required the creation of 13 majority black state representative districts where previously there had been four and three majority black state senate districts where previously there had been one, and the redrawing of adjacent districts. *Id.* at 198, 202. (By contrast, the court pointed out that in *Smith v. Clinton,* only one district had to be redrawn. *Id.* at 202). Nevertheless, the court concluded that any prejudice to the State was insufficient to justify denying the plaintiffs a remedy in the 1990 elections.

> As noted, the expense, trouble, and disruption of compliance . . . will be substantial, and more so than in *Smith*. But the expense, trouble, and disruption are not a consequence of plaintiffs' delay in filing. They would have occurred whenever the suit was filed—even if it had been filed, say, right after passage of the 1982 amendments to the Voting Rights Act. There is some additional increment of public confusion that will be caused by changing district lines less than two months before filing opens, and less than four months before the first primary election. It is also true that the census data relied on by both sides—and that presumably will be the basis of any remedial plan—become increasingly stale as time passes after the 1980 census. . . . [T]he staleness of the 1980 census data cannot be escaped. For even under defendants' theory, which is that the case should be dismissed, the 1990 elections will be run in districts based on 1980 census data. The true comparison is between out-of-date districts that (by hypothesis) dilute the black vote, and out-of-date districts that do not.
>
> The question is essentially one of judgment and degree. Logic cannot absolutely exclude either answer. In our judgment, the defense of laches must fail. In part, the expense and disruption that will undeniably occur are nothing but a consequence of the wrong that has been done. The illegality, the injury, extend beyond a single district, and so the remedy

> that must be applied will necessarily be more trouble than it was in *Smith*. *To the extent that electoral confusion and disruption exceed what they would have been if the case had been filed earlier, we think that fairness and equal opportunity in voting are worth it.* We will not say to these plaintiffs, "Wait for another census. The time is not yet ripe." They have heard these words too many times in the past.

*Id.* at 202-203 (emphasis added).

In the present case, as in *Jeffers,* the Defendants claim undue prejudice from having to redraw district lines late in the decade, which they claim will be based on stale census data and will involve disruption. But as the *Jeffers* court explains, the staleness of the data exists whether the election is held under the existing plan or under a redrawn plan that complies with Section 2. And any disruption from a new redistricting plan would have occurred even if the present challenge had been filed right after the existing plan was drawn in 2012 or right after the only election in the plan was held in 2015. Here, of course, any disruption is limited because, as in *Smith,* the case involves only one district that is alleged to violate Section 2.

In rejecting the defense of laches, both *Jeffers* and *Smith* pointed out that the Voting Rights Act had been amended in 1982 and had been applied and definitively interpreted in the 1986 decision of *Thornburg v. Gingles,* 478 U.S. 30 (1986), thus mitigating to some extent the plaintiffs' delay. But in both cases, the primary reason given by the Court to excuse the late-decade filing was that "the injury alleged by the plaintiffs is continuing, suffered anew each time a State Representative election is held under the [illegal] structure." *Smith v. Clinton,* 687 F. Supp. at 1313; *Jeffers v. Clinton,* 730 F. Supp. at 202. The fact that, in the present case, the injury was inflicted in the 2015 election is not a reason to allow it to be inflicted again in the 2019 election. As the court held in *Jeffers*: "To the extent that electoral confusion and disruption exceed what they would have been if the case had been filed earlier, we think that fairness and equal opportunity in voting are worth it." *Id.* at 203. The same is true here.

5

The Ninth Circuit in *Garza v. County of Los Angeles,* 918 F.2d 763, 772 (9th Cir. 1990), *cert. denied* 498 U.S. 1028 (1991), rejected a laches defense in a redistricting case brought late in the decade. In *Garza,* the court of appeals affirmed the district court's finding of intentional discrimination through the fragmentation of the Hispanic population in the 1981 redistricting of the Los Angeles County Board of Supervisors. *Id.* at 771. Los Angeles County contended that laches should apply because four elections had been held under the 1981 redistricting plan and the post-1990 Census redistricting process would be starting in a few months. *Id.* at 772. In its decision, which was issued on November 2, 1990, the court rejected the laches defense because of ongoing injury: "Because of the ongoing nature of the violation, plaintiffs' present claim ought not be barred by laches." *Id.* The Ninth Circuit ordered that elections be held forthwith under a remedial plan that cured the discrimination stemming from the 1981 plan. *Id.* at 777.

There are situations where courts have applied the doctrine of laches to deny relief in redistricting cases because the request for relief came far too close to the election itself or where there were other circumstances that are not present here. Those decisions are inapplicable to this case, where the challenge to the district and the request for a new plan for that district were made nearly thirteen months prior to the election, only one of the State's fifty-two senate districts is being challenged, only one prior election has been held from that district, and a remedy can be drawn simply by changing that district and one adjacent district with minimal disruption. As noted in one of the cases cited by the Defendants in their motion: "Whether laches bars an action is a *discretionary determination* to be made by the court *based on the particular facts presented*." *Arizona Minority Coalition For Fair Redistricting v. Arizona Indep. Redistricting Comm'n,* 366 F.Supp.2d 887, 908 (D. Ariz. 2005) (emphasis added).

For example, the primary redistricting case cited by the Defendants is *Maxwell v. Foster,* No. CIV.A.98-1378, 1999 WL 33507675 (W.D. La. Nov. 24, 1999). There, the district court's dismissal occurred on November 24, 1999 --- *after* the 1999 statewide legislative elections had been held in Louisiana. As the court in *Maxwell* noted, "three elections" had been held under the plan. *Id*. at *4. (Those would be the 1991, 1995, and 1999 elections since Louisiana's legislative election cycle is the same as Mississippi's). Further, the Plaintiffs there were challenging not just an isolated district, but instead had asked the court "to declare the entire [legislative] plan invalid." *Id.*.

In *White v. Daniel,* 909 F.2d 99 (4th Cir. 1990), the plaintiffs did not file their challenge until "months *after* the last election under the 1981 plan took place." *Id.* at 102-103 (emphasis added). The Court specifically noted that the disruption of a remedial redistricting "is not justified when there will be no election prior to November 1991, at which time the court-ordered plan may no longer be appropriate because of new census information." *Id.* at 104.

In *Arizona Coalition,* the court emphasized the last-minute nature of the plaintiffs' claim: "In this case, as in *Maryland Citizens* and *Simkins,* Plaintiffs waited until just weeks before critical election deadlines to file suit. Laches bars their claim." 366 F.Supp.2d at 909.[2] In *Fouts v. Harris,* 88 F.Supp.2d 1351, 1354 (S.D. Fla. 1999), the court noted that three election cycles had already been conducted under the plan. And in *Marshall v. Meadows,* 921 F.Supp. 1490, 1494 (E.D. Va. 1996), the court relied on the fact that the plaintiffs filed only 95 days before the primary election.

In the present case, the 2012 Senate redistricting plan has been used in only one election,

---

[2] The court's citations were to *Maryland Citizens for a Representative General Assembly v. Governor of Maryland,* 429 F.2d 606, 610 (4th Cir. 1970), where plaintiffs filed their suit thirteen weeks prior to the filing deadline, and *Simkins v. Gressette,* 631 F.2d 287, 296 (4th Cir. 1980), where plaintiffs filed two days before the opening of the qualifying deadline.

which is the one in 2015. In that election, the African-American candidate, Plaintiff Joseph Thomas, received 46% of the vote against the victorious white candidate.[3] Although a lawsuit could have been brought prior to that election, the fact that the Plaintiffs waited does not mandate dismissal of this case, particularly given that they filed it over a year before the 2019 primary.[4] Indeed, the 2015 election results will form a significant part of the evidence demonstrating that the plan violates Section 2. Only one of the 52 state senate districts is challenged here, and the violation can easily be cured by redrawing that district and one other.[5] The relevant equitable facts are very different in this case from the laches cases cited by the Defendants. And most importantly, "the injury alleged by the plaintiffs is continuing, suffered anew each time a[n] . . . election is held under the [illegal] structure." *Smith v. Clinton,* 687 F. Supp. at 1313; *Jeffers v. Clinton,* 730 F. Supp. at 202. "To the extent that electoral confusion and disruption exceed what they would have been if the case had been filed earlier, we think that fairness and equal opportunity in voting are worth it." *Id.* at 203. The doctrine of laches should not be applied to dismiss this case.

---

[3] *See* the declaration of William S. Cooper which is attached to the Plaintiffs' Response and is filed contemporaneously with this memorandum.
[4] The Defendants claim "there was open litigation in 2012 that contested the 2012 Senate Plan from which Plaintiffs could have lodged their very claim." [Doc. 20 at 9, *citing Miss. State Conf. NAACP v. Barbour,* No. 3:11-cv-00159 (S.D. Miss. 2012). Actually, that case challenged the use of the 2002 Senate Plan in the 2011 election. The three-judge district court rejected that claim, holding that reapportionment was not required until 2012. [*See* Doc. 124 in that case]. Subsequently, after the 2012 plan was enacted and precleared, the plaintiffs moved to set aside the 2011 elections and hold statewide special elections in 2013 from a court-ordered plan. According to the plaintiffs in that case, the 2012 plan should not be used in any special elections since it diluted black voting strength statewide, but no specific allegations were made as to which specific districts violated Section 2. [*See* Doc. 140 in that case]. The motion for special elections was denied in a very brief order. [*See* Doc. 159 in that case]. Thus, that case was not a challenge to the 2012 plan, but instead was a challenge to the use of the 2002 plan in the 2011 elections followed by a request to set aside the 2011 elections and use a court-ordered plan in special elections in 2013.
[5] The declaration from demographer William S. Cooper --- which is attached to the Plaintiffs' Response filed contemporaneously with this memorandum --- states that District 22 can be redrawn with a black voting age population of 62% by shifting the Madison County precincts now in 22 to 23 and also shifting nine Yazoo County precincts from 22 to 23, and then shifting Issaquena County and eight Warren County precincts from 23 to 22. To the extent there is a disruption for the circuit clerks in these counties, it will be minimal.

## III. THE MISSISSIPPI STATE BOARD OF ELECTION COMMISSIONERS AND ITS MEMBERS (THE GOVERNOR, SECRETARY OF STATE, AND ATTORNEY GENERAL) ARE THE PROPER DEFENDANTS

Defendants argue that they are not the proper defendants because they lack "any role in drawing or approving the state senate districts" and cannot "effectuate the relief sought by Plaintiffs." [Doc. 20 at 17-18]. Defendants in this matter are, however, the officials responsible for enforcing legislative policy and conducting elections in Mississippi, and they have been routinely and without controversy named as defendants in other state-level voting rights cases in Mississippi.

For example, in *Connor v. Winter*, 519 F. Supp. 1337 (S.D. Miss. 1981), a state legislative redistricting case, the court explained why executive officials are proper defendants in such suits, addressing the precise reasons raised by defendants here:

> When bringing a constitutional attack on a state statute, plaintiffs routinely sue the executive officer charged with responsibility for enforcing the legislative policy, even though the executive neither enacted the disputed statute nor possesses the power unilaterally to repeal it. The Election Commission was the only agency with statewide power to prevent the ballot placement of candidates for election to a malapportioned legislature. While they had no power to create reapportionment, they could control the continued election of members to a legislative body found to be unconstitutionally constituted.

*Id.* at 1343.

Similarly, in *Watkins v. Mabus*, 771 F. Supp. 789, 792 (S.D. Miss. 1992), another challenge to a state legislative redistricting plan, the defendants included the State Board of Election Commissioners and its members --- namely, the Governor, Attorney General, and the Secretary of State.[6] And, in *Martin v. Allain*, 658 F. Supp. 1183 (S.D. Miss. 1987), a case challenging the district lines used to elect state court judges in Mississippi, the only state

---

[6] There, the legislators voluntarily moved to intervene as additional defendants — not substituting for the executive defendants. 771 F. Supp. at 792.

defendants were the members of State Board of Election Commissioners. The court there described the defendants thusly: "The Defendants are the Governor of the State of Mississippi and other state officials and official bodies responsible for conducting elections in the state. All of the defendants are sued in their official capacities." Id. at 1187.

The roles of the Governor, the Attorney General, the Secretary of State, and the State Board of Election Commissioners have remained largely the same in regard to their duties concerning elections since these decisions were issued. These defendants are responsible for implementing legislative policy and are the officials responsible for conducting elections in this state. See MS ST § 7-1-5 (Governor is "supreme executive officer of the state" and is tasked to with "see[ing] that the laws are faithfully executed"); MS ST § 7-5-1 (Attorney General is the "chief legal officer and advisor for the state"); MS ST § 7-3-5 (Secretary of State is the State's chief election officer); MS ST § 23-15-211 (requiring Secretary of State to supervise training of poll officials in federal election laws and procedures). All three officers sit on the Defendant State Board of Election Commissioners. MS ST § 23-15-211.

Implicit in Defendants' argument is the claim that the legislature or the now defunct Standing Joint Committee are the only possible parties. In *Connor v. Winter*, the court hinted at the disingenuous nature of such an attempt to raise the failure to add legislative defendants as indispensable parties in a redistricting action, noting that legislative entities might enjoy absolute immunity from suit. 519 F. Supp. at 1340 n.1 (citing Tenney v. Brandhove, 341 U.S. 367 (1951)). That the ultimate remedy in this case may implicate the legislature does not change the result. As the Seventh Circuit explained, "The determination of whether a Section Two violation has occurred requires no determination of legislative intent, and the legislative presence is therefore not needed for determining a Section Two violation. . . . There is nothing inherent in a

court's determination of liability under Section Two that requires the legislature's presence, even if the legislature has constitutional authority for apportionment." *Dickinson v. Indiana St. Election Bd.*, 933 F. 2d 497, 501 (7th Cir. 1991) (citations omitted). As typically happens in these cases, time permitting, the legislature may be given an opportunity to submit a new redistricting plan to the Court, if plaintiffs prevail on their claim. But nothing requires the legislature's presence now or detracts from the appropriateness of the existing defendants as subject to this suit.

## CONCLUSION

For the foregoing reasons, and on the basis of the authorities cited, the motion for summary judgment should be denied.

September 18, 2018

Respectfully submitted,

*s/ Robert B. McDuff*
ROBERT B. MCDUFF, MSB 2532
767 North Congress Street
Jackson, MS 39202
(601) 969-0802
rbm@mcdufflaw.com

BETH L. ORLANSKY, MSB 3938
MISSISSIPPI CENTER FOR JUSTICE
P.O. Box 1023
Jackson, MS 39205-1023
(601) 352-2269
borlansky@mscenterforjustice.org

KRISTEN CLARKE
JON GREENBAUM
EZRA D. ROSENBERG
ARUSHA GORDON
LAWYERS'COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1401 New York Ave., NW, Suite 400
Washington, D.C. 20005
(202) 662-8600
erosenberg@lawyerscommittee.org
agordon@lawyerscommittee.org
*Admitted Pro Hac Vice*

ELLIS TURNAGE, MSB 8131
TURNAGE LAW OFFICE
108 N. Pearman Ave
Cleveland, MS 38732
(662) 843-2811
eturnage@etlawms.com

PETER KRAUS
CHARLES SIEGEL
CAITLYN SILHAN
WATERS KRAUS
3141 Hood Street, Suite 700
Dallas, TX 75219
(214) 357-6244
pkraus@waterskraus.com
csiegel@waterskraus.com
csilhan@waterskraus.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on September 18, 2018 I electronically filed a copy of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment using the ECF system which sent notification of such filing to all counsel of record.

               s/Robert B. McDuff