IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOSEPH THOMAS; VERNON AYERS;
and MELVIN LAWSON                                                                PLAINTIFFS

v.                                                                                   NO. 3:18-cv-00441-CWR-FKB

PHIL BRYANT, Governor of the State of
Mississippi; DELBERT HOSEMANN,
Secretary of State of the State of Mississippi;
and JIM HOOD, Attorney General of the
State of Mississippi, all in the official capacities
of their own offices and in their official
capacities as members of the State Board
of Election Commissioners                                                        DEFENDANTS

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO CONVENE THREE-JUDGE DISTRICT COURT OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF JURISDICTION

Defendants have respectfully moved that this Court convene a three-Judge District Court, as required by the mandatory terms of 28 U.S.C. § 2284. Only in the alternative, should this Court decline to convene a three-Judge Court, then the complaint must be dismissed, because it is clearly "challenging . . . the apportionment of any statewide legislative body." In such a case, § 2284(a) mandates that "[a] district court of three judges shall be convened."[1]

As this Court is well aware, prior challenges to the apportionment of the Mississippi Legislature or either of its two bodies have always been resolved by three-Judge District Courts. The initial litigation raised only constitutional challenges based on the principle of one-man-one-vote. *Connor v. Johnson*, 256 F. Supp. 962 (S.D. Miss. 1966), *final judgment entered sub nom.*

---

[1] "[T]he 'shall' language of the statute quoted above appears to make the convening of such a court a jurisdictional requirement." *Armour v. Ohio*, 925 F.2d 987, 989 (6th Cir. 1991) (*en banc*). That Court reversed and remanded even though there had apparently been no request in the District Court pursuant to § 2284(b)(1).

*Connor v. Finch*, 469 F. Supp. 693 (S.D. Miss. 1979). Later on, plaintiffs added claims arising under the Voting Rights Act of 1965. *See*, *e.g.*, *Watkins v. Mabus*, 771 F. Supp. 789, 791 (S.D. Miss.), *aff'd in pertinent part*, 502 U.S. 954 (1991). To this day, constitutional and statutory challenges to state legislative apportionments continue to be litigated together in a single action before a three-Judge District Court. *See*, *e.g.*, *Abbott v. Perez*, 138 S.Ct. 2305 (2018).

Only recently have any plaintiffs challenged statewide legislative apportionments while attempting to avoid constitutional claims. An organization has recently filed three such challenges to the apportionment of the Legislatures of Alabama, Louisiana, and Georgia. *See Chestnut v. Merrill*, No. 2:18-cv-00907-KOB (N.D. Ala.); *Johnson v. Ardion*, No. 3:13-cv-625-SDD-EWD (M.D. La.); *Dwight v. Kemp*, No. 1:18-cv-2869 (N.D. Ga.). The Secretaries of State of Alabama and Louisiana have filed motions arguing that a single District Judge may not exercise jurisdiction over those purported statutory challenges to legislative apportionment. *Chestnut*, Dkt. # 15 (N.D. Ala. Nov. 2, 2018); *Johnson*, Dkt. # 16 (M.D. La. July 31, 2018). Neither of those motions has yet been resolved.

These defendants now join the election officials of our neighboring States in seeking enforcement of § 2284(a). Congress both said and intended that challenges to the apportionment of a statewide legislative body are of sufficient significance to our federal system that they should be considered by three-Judge District Courts.

## ARGUMENT

**SECTION 2284(a) MANDATES THAT A THREE-JUDGE DISTRICT COURT BE CONVENED TO RESOLVE ANY CHALLENGE TO THE APPORTIONMENT OF ANY STATEWIDE LEGISLATIVE BODY.**

**A.     Section 2284(a) is grammatically ambiguous.**

Any analysis of the statute must begin with its language. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). Section 2284(a) provides:

> A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

As a matter of English grammar, this sentence has two equally plausible meanings, depending on the nature of the word "apportionment" the second time it is used.

First, the second "apportionment" may be read as a direct object of the verb "challenging." In that case, the sentence should be read as requiring a three-Judge District Court "when an action is filed challenging . . . the apportionment of any statewide legislative body."

Alternatively, the second "apportionment" may be read as an object of the preposition "of." Under that reading, the statute would require the convening a three-Judge District Court only "when an action is filed challenging the constitutionality of . . . the apportionment of any statewide legislative body."[2] In their artfully crafted complaint, these plaintiffs attempt to avoid a challenge to constitutionality, so as to bring themselves within this second possible reading.[3]

### B. The legislative history of § 2284(a) unambiguously requires a three-Judge Court to resolve any challenge to the apportionment of a statewide legislative body.

Because English grammar cannot resolve this ambiguity, it becomes permissible for this Court to consult legislative history. *United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004) ("If . . . the statute is ambiguous, we may turn to legislative history."). Fortunately, there is no such ambiguity in the history of the statute which adopted the current language, Pub. L. 94-381, § 3,

---

[2] Under that possible reading, however, the second "apportionment" would be entirely superfluous. The same meaning could be achieved by saying, "the constitutionality of the apportionment of congressional districts or any statewide legislative body." Because courts presume that every word in a statute has meaning, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001), this second reading should be rejected.

[3] Plaintiffs also purport to challenge only District 22 [Dkt. # 9, ¶ 1], but that makes no difference. Their challenge is to the apportionment of the body whether they attack one district or all 52. Indeed, they allege that a remedy may require "changes . . . to one or two adjacent districts." [Dkt. # 9, ¶ 30]. A challenge to a statute revising only three Georgia Senate districts was held to require a three-Judge District Court. *Kidd v. Cox*, 2006 WL 1341302 (N.D. Ga. May 16, 2006).

Aug. 12, 1976, 90 Stat. 1119.

The bill to restrict the jurisdiction of three-Judge District Courts was adopted by the United States Senate on June 20, 1975. The House adopted the Senate bill the next summer, on August 2, 1976. The report of the Senate Judiciary Committee, issued two days before the Senate's consideration of the bill, makes clear that its provisions apply to all apportionment challenges, at either the State or federal level. S. Rep. 94-204, 94th Cong., 2nd Sess. 1976, 1976 U.S.C.C.A.N. 1988, 1975 WL 12516.

On its very first page, in a section entitled "PURPOSE OF BILL," the Committee explained that "three-judge courts would be retained . . . in any case involving congressional reapportionment or the reapportionment of any statewide legislative body." Report at 1, 1976 U.S.C.C.A.N. at 1988. In further explanation, the Committee declared:

> The bill preserves three-judge courts for cases involving congressional reapportionment or the reapportionment of a statewide legislative body because it is the judgment of the committee that these issues are of such importance that they ought to be heard by a three-judge court and, in any event, they have never constituted a large number of cases.

Report at 9, 1976 U.S.C.C.A.N. at 1996. Explaining the meaning of "any statewide legislative body", the Committee said, "Where such a body exercises its powers over the entire State, this section requires that three judges hear cases challenging apportionment of its membership." *Id*.

It is hardly surprising that the Report made no exceptions for statutory challenges to the apportionment of Legislatures, because it understood that the very few available statutory challenges also required three-Judge Courts. The Committee said, "Three-judge courts would continue to be required . . . in cases under the Voting Rights Act of 1965, 42 U.S.C. section 1971g, 1973(a), 1973c and 1973h(c)." *Id*. Of course, § 1973(a) is § 2(a) of the Voting Rights Act, the

statute upon which these plaintiffs purport to rely. [Dkt. # 9, ¶ 1].[4] The Committee plainly declared its belief that actions under § 2 required three-Judge Courts, and the Committee indicated the same understanding six years later when it amended § 2:

> Finally, the Committee reiterates the existence of the private right of action under Section 2, as has been clearly intended by Congress since 1965. See *Allen v. Board of Elections*, 393 U.S. 544 (1969).

S. Rep. No. 97-417, 97th Cong. 2nd Sess. 1982 at 30, 1982 U.S.C.C.A.N. 177, 1982 WL 25033. *Allen*, of course, required the convening of a three-Judge District Court for proceedings under § 5, now codified as 52 U.S.C. § 10304, and the Committee indicated its expectation of the same result under § 2.

Whether or not Congress in 1976 and 1982 correctly anticipated the procedures to be employed in the enforcement of § 2, it gave no indication that any statute could be invoked against the apportionment of a Legislature without convening a three-Judge District Court. The 1976 Report acknowledged the importance of that protection to the Attorney General of Mississippi, who "suggested that three-judge courts should be retained because a court of three judges signifies the seriousness of the case and issues the strain between the States and the Federal Government." S. Rep. 94-204 at 10, 1976 U.S.C.C.A.N. at 1997. Certainly, Chairman Eastland would not have supported legislation which would have made it easier for federal courts to draw legislative lines in Mississippi. The Congress that adopted § 2284(a) in 1976 clearly had no intention that a suit "challenging . . . the apportionment of any statewide legislative body" could be considered by anything other than a three-Judge District Court.

    **C.**    **Appellate authority supports the conclusion that constitutional claims are inextricably intertwined with § 2 claims.**

---

[4] The Voting Rights Act has recently been recodified. The language formerly codified as § 1973(a) now appears as 52 U.S.C. § 10301(a).

Because, until recently, complaints have regularly combined constitutional and statutory challenges to statewide legislative apportionments, there are no cases squarely addressing the issue which plaintiffs have concocted here.  However, in *Page v. Bartels*, 248 F.3d 175 (3d Cir. 2001), the Third Circuit considered the related question of whether a § 2 claim could be resolved by a single Judge, while reserving the constitutional claims for a three-Judge Court.  Prior decisions had plainly recognized the power of a single Judge to resolve statutory claims without convening a three-Judge Court to hear constitutional claims.  *Id*., at 188-89, citing *Hagans v. Lavine*, 415 U.S. 528 (1974).  The Third Circuit, however, held that such a distinction could not be drawn between a § 2 challenge and a constitutional challenge.  Reading the same legislative history available to this Court, the Third Circuit concluded "that Congress was concerned less with the *source* of the law on which an apportionment challenge was based than on the unique importance of apportionment cases generally."  248 F.3d at 190 (emphasis in original).  The Court "conclude[d] that because statutory Voting Rights Act challenges to statewide legislative apportionment are generally inextricably intertwined with constitutional challenges to such apportionment, those claims should be considered an 'action' within the meaning of § 2284(a)."  *Id*.[5]

Here, plaintiffs have sought to extricate a § 2 claim from its inextricable intertwining with the Constitution.  While *Page* did not address such a complaint, its logic compels the same result.  Artful pleading should not be allowed to deprive a Legislature of the respect for its apportionment

---

[5] *Page* had not yet been decided when the Sixth Circuit decided *Rural West Tenn. African-American Affairs Council v. Sundquist*, 209 F. 3d 835 (6th Cir. 2000), so its reasoning was not available for consideration.  In the Tennessee litigation, separate suits challenging the apportionment of the House and Senate had been combined for consideration by a three-Judge District Court.  *Id*., at 237.  The Supreme Court had twice considered direct appeals, finally affirming denial of relief on the apportionment of the Senate.  After that defeat, plaintiffs amended their remaining complaint "to challenge the House Plan on the sole ground that it violated § 2 of the Voting Rights Act.  Because the amended complaint contained no constitutional claims the three-judge court disbanded itself."  *Id*., at 838.  The Sixth Circuit opinion did not address the propriety of that decision, nor did it explain its decision to accept jurisdiction of the appeal.  Whether or not that unexplained jurisdictional result is binding in the Sixth Circuit, the careful explanation by the Third Circuit in *Page* should be considered more persuasive here.

statute which Congress plainly intended to afford it in 1976.

### D. Challenges under § 2 should be construed as constitutional in nature to avoid any possible constitutional infirmities in § 2 itself.

Indeed, plaintiffs' attempt to unmoor § 2 from the Constitution itself raises profound constitutional problems. The Fifth Circuit recognized that the 1982 amendment to § 2 purported to reach legislation that is not unconstitutional in itself; such a reach is permissible only for the purpose of providing a remedy for past unconstitutional actions. *Jones v. City of Lubbock*, 727 F.2d 364 (5th Cir. 1984). "[W]e perceive § 2 as merely prescribing a potion to remove vestiges of past official discrimination and to ward off such discrimination in the future. Congress has not expanded the Constitution's substantive guarantees, but simply redefined and strengthened the statutory protections around core constitutional values, thus exercising its authority within the confines of the Constitution." *Id.*, at 374 n.6, *quoting Major v. Treen*, 574 F. Supp. 325, 347 (E.D. La. 1983).[6]

Here, the amended complaint is replete with offers to prove prior unconstitutional behavior. "The lack of opportunity is the result of white bloc voting and lower African-American turnout that are vestiges of the historical discrimination and extreme socio-economic disparities that have been inflicted on African-Americans over a long period of time." [Dkt. # 9, ¶ 15.] "There is a lengthy and documented history of voter discrimination against African-Americans in Mississippi." [Dkt. # 9, ¶ 31.] "The history of discrimination and these socioeconomic disparities have hindered their ability to participate in the political process . . . ." [Dkt. # 9, ¶ 32]. Plaintiffs

---

[6] "Petitioners' approach . . . invites the divisive constitutional questions that are both unnecessary and contrary to the purposes of our precedents under the Voting Rights Act." *Bartlett v. Strickland*, 556 U.S. 1, 23 (2009) (Opinion of Kennedy, J.) (holding that § 2 does not apply to districts where a minority cannot constitute a majority of eligible voters). These plaintiffs raise a constitutional issue by contending that Congress provided that a majority-minority district like District 22 could violate § 2. While the Supreme Court has speculated that "it may be possible for a citizen voting-age majority to lack real electoral opportunity," *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 428 (2006), there appears to be no case in which a court has held such a district to violate the results test of § 2 so as to require an increase in minority population.

have not abandoned these allegations; instead, they seek to support them with evidence. The Honorable Fred L. Banks, Jr., has sworn:

> There is a lengthy and documented history of voter discrimination against African-Americans in Mississippi, the state which has always had the highest percentage of black citizens in our nation, since the civil war. This was then recognized by a number of federal court decisions, including those cited in the complaint in this case.

Report of Fred L. Banks, Jr., ¶ 2. Thus, plaintiffs have alleged and have offered evidence that the 2012 redistricting statute has an unconstitutional basis. They simply ask this Court to invalidate it on statutory grounds, instead of the constitutional claims they have alleged and hope to prove.

Plaintiffs' attempt to divorce the Voting Rights Act from the Constitution contravenes the language and the intent of Congress in both 1976 and 1982. Their complaint has been "filed challenging . . . the apportionment of any statewide legislative body." That challenge must be considered by a District Court of three Judges.

## CONCLUSION

For the reasons stated herein, this Court must convene a three-Judge District Court. Because § 2284(a) is jurisdictional, the complaint must be dismissed unless a three-Judge Court is convened.

This the 24th day of January, 2019.

                                                                  Respectfully submitted,

                                                                  *s/ Michael B. Wallace*
                                                                  MICHAEL B. WALLACE (MSB #6904)
                                                                  WISE CARTER CHILD & CARAWAY, P.A.
                                                                  Post Office Box 651
                                                                  Jackson, MS 39205-0651
                                                                  (601) 968-5534
                                                                  mbw@wisecarter.com

                                                                  ATTORNEY FOR DEFENDANTS PHIL BRYANT, GOVERNOR OF THE STATE OF MISSISSIPPI, AND DELBERT HOSEMANN,

                    SECRETARY OF STATE OF THE STATE OF MISSISSIPPI

                    TOMMIE S. CARDIN (MSB #5863)
                    CHARLES E. GRIFFIN (MSB #5015)
                    BENJAMIN M. WATSON (MSB #100078)
                    B. PARKER BERRY (MSB #104251)
                    BUTLER SNOW LLP
                    Suite 1400 1020
                    Highland Colony Park
                    Ridgeland, MS 39157
                    Post Office Box 6010
                    Ridgeland, MS 39158-6010
                    Tel: (601) 985-4570
                    Fax: (601) 985-4500
                    E-mail: tommie.cardin@butlersnow.com
                    E-mail: charles.griffin@butlersnow.com
                    E-mail: ben.watson@butlersnow.com
                    E-mail: parker.berry@butlersnow.com

                    ATTORNEYS FOR ALL DEFENDANTS

OF COUNSEL:

DOUGLAS T. MIRACLE
MISSISSIPPI ATTORNEY GENERAL'S OFFICE
550 High Street, Suite 1200
P.O. Box 220 (39205)
Jackson, MS  39201
dmira@ago.state.ms.us

ATTORNEY FOR JIM HOOD, ATTORNEY GENERAL
OF THE STATE OF MISSISSIPPI

## **CERTIFICATE OF SERVICE**

      I, Michael B. Wallace, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

      This the 24th day of January, 2019.

                                      *s/ Michael B. Wallace*
                                      Michael B. Wallace