# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**JOSEPH THOMAS, et al.**                                                     **PLAINTIFFS**

**V.**                                                **CAUSE NO. 3:18-CV-441-CWR-FKB**

**PHIL BRYANT, et al.**                                                     **DEFENDANTS**

## **ORDER**

On July 9, 2018, plaintiffs Joseph Thomas, Vernon Ayers, and Melvin Lawson filed this suit claiming that the boundaries of Mississippi Senate District 22 are drawn in violation of Section 2 of the Voting Rights Act. The new boundaries they propose would affect District 22 and two adjacent Districts.

On August 8, 2018, in their answer, defendants Governor Phil Bryant, Attorney General Jim Hood, and Secretary of State Delbert Hosemann admitted that this Court has subject matter jurisdiction and can grant declaratory and injunctive relief. The parties proceeded to brief motions, exchange written discovery, designate experts, argue the defendants' dispositive motion,[1] take depositions, and prepare for a trial set to begin on February 6, 2019.

Now, days before trial, two of the defendants (Bryant and Hosemann) have brought in new lawyers to present a new defensive theory.[2] They contend that this suit challenges "the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body," which, if true, would require a three-judge court. 28 U.S.C. § 2284(a). Unless such a court is convened, they argue that the case must be dismissed for lack of subject matter jurisdiction.

---

[1] During oral argument, counsel never questioned whether this Court had jurisdiction to hear this claim. That hearing was held on January 16, 2019, eight days before the defendants filed the present motion.

[2] Hood's representative has joined in their motion.

Of course, the plaintiffs have not asserted any constitutional claims. The plaintiffs also do not seek to reapportion congressional districts or a statewide legislative body.

The defendants nevertheless proceed with two lines of attack. They first argue that a Section 2 claim should be considered *like* a constitutional claim for the purpose of convening a three-judge court. In the alternative, they contend that the text and legislative history of § 2284(a) reveal that Congress wanted three-judge courts to be convened in cases like ours.[3]

Three-judge courts are "an exceptional procedure." *Phillips v. United States*, 312 U.S. 246, 248 (1941). They are rare in part because Congress has been "mindful that the requirement of three judges . . . entails a serious drain upon the federal judicial system," *id.* at 250, and in part because convening such a court "may often result in a delay in a matter needing swift initial adjudication," *Allen v. State Bd. of Elections*, 393 U.S. 544, 561 (1969) (citation omitted). The Supreme Court has "long held that congressional enactments providing for the convening of three-judge courts must be strictly construed." *Id.* (citing *Phillips*, 312 U.S. at 246).

Having considered the defendants' arguments and authorities against this standard, the Court finds that a three-judge court is not required in this case.

First, there is no justification for treating Section 2 and constitutional claims as identical. They are different causes of action with different evidentiary requirements. *See League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 425, 442 (2006). As Chief Judge Bowdre recently concluded in a similar case, a "challenge only under Section 2 . . . is not a constitutional

---

[3] Part of the defendants' argument turns on speculation about what a single U.S. Senator "would have" wanted to happen in these cases. Docket No. 45 at 5. As Justice Scalia and Bryan A. Garner explain, however, "[t]he search for what the legislature 'would have wanted' is invariably either a deception or a delusion." *Reading Law: The Interpretation of Legal Texts* 95 (2012). "What the legislature 'would have wanted' it did not provide, and that is an end of the matter." *Id.* at 94.

challenge" and does not require a three-judge court. *Chestnut v. Merrill*, --- F. Supp. 3d ---, 2019 WL 338909, at *5 (N.D. Ala. Jan. 28, 2019).[4]

As "master of the complaint," it is the plaintiff's choice to bring or forego a constitutional claim. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (quotation marks and citation omitted). In this case, the plaintiffs have elected not to pursue one. Neither the defendants nor the Court can force them to change their minds. *See Fortune v. XFit Brands, Inc.*, No. 3:18-CV-545-CWR-LRA, 2018 WL 6332640, at *3 (S.D. Miss. Dec. 4, 2018) ("If the plaintiff's decisions were so easily invalidated, so easily written off by the court or her opponent, she should not bother to file a complaint.").

Second, the defendants argue that § 2284(a) requires a three-judge court to hear *any* cause of action which seeks to redraw a portion of a statewide legislative body. In other words, they claim that Congress intended standalone Section 2 claims to be heard by a three-judge court.

The defendants are incorrect. The plain language of the statute requires a three-judge court when plaintiffs challenge "*the constitutionality of* the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). The term "the constitutionality of" modifies all of the phrases which follow it, per the series-qualifier canon of construction.[5] *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012).

That is hardly the end of this exercise in textualism, however. The Supreme Court has cautioned that "there are two opposing canons on almost every point." *Lockhart v. United States*,

---

[4] The new lawyers explained that similar arguments had been presented to the judge in *Chestnut*, and stated that the defendants "now join the election officials of our neighboring States in seeking enforcement of § 2284(a)." Docket No. 45 at 2. Days later Chief Judge Bowdre rejected those arguments.
[5] Despite its "fancy name," the series-qualifier canon "reflects the completely ordinary way that people speak and listen, write and read." *Lockhart v. United States*, 136 S. Ct. 958, 970 (2016) (Kagan, J., dissenting).

136 S. Ct. 958, 968 (2016) (quoting Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed*, 3 Vand. L. Rev. 395, 401 (1950)). Today's case is no different.

The defendants contend that the series-qualifier canon results in needless words, in violation of the surplusage canon. *See* Scalia & Garner at 174. It is a fair point. If "the constitutionality of" is indeed carried over to all following phrases, the second use of "the apportionment of" is rendered unnecessary. The statute would be more precise without repeating "the apportionment of."

The Supreme Court nevertheless urges vigilance with the surplusage canon. "Our hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs. It is appropriate to tolerate a degree of surplusage." *Lockhart*, 136 S. Ct. at 966 (quotation marks, citation, and brackets omitted). The leading treatise agrees: "Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style[6] or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." Scalia & Garner at 176-77. Justice Scalia and Mr. Garner warn that "a clever interpreter could create unforeseen meanings or legal effects from this stylistic mannerism." *Id.* at 177.

The defendants' argument *is* very clever. Without admitting as much, the defendants ask the Court to rewrite § 2284(a) and transform it into this: *a three-judge court is required when plaintiffs challenge the apportionment of any statewide legislative body or the constitutionality of the apportionment of congressional districts.* Unfortunately for them, that is not what Congress wrote and this Court cannot rewrite the statute to suit their needs. "Allowing laws to be rewritten

---

[6] *Cf. King v. Burwell*, 135 S. Ct. 2480, 2501 (2015) ("Pure applesauce.") (Scalia, J., dissenting).

4

by judges is a radical departure from our democratic system." *Id.* at 83. "So this court will apply the law before it and will not read new provisions into—or strike existing words from—the statutes at issue." *Chestnut*, 2019 WL 338909, at *5.

Finally, this Court's conclusion is buttressed by several other decisions reading § 2284(a) the same way. *E.g.*, *Rural W. Tenn. African-Am. Affairs Council v. Sundquist*, 209 F.3d 835, 838 (6th Cir. 2000) ("RWTAAC then amended its complaint to challenge the House Plan on the sole ground that it violated § 2 of the Voting Rights Act. Because the amended complaint contained no constitutional claims, the three-judge court disbanded itself."); *Page v. Bartels*, 248 F.3d 175, 189 (3d Cir. 2001), *as amended* (June 25, 2001) (finding that § 2284(a) "only requires a three-judge district court for certain constitutionally-based apportionment challenges"); *Kidd v. Cox*, No. 1:06-CV-997-BBM, 2006 WL 1341302, at *4 (N.D. Ga. May 16, 2006) ("In pertinent part, § 2284(a) requires that a three-judge court be convened 'when an action is filed challenging the constitutionality of . . . the apportionment of any statewide legislative body.'") (ellipses in original). This Court sees no reason to deviate from these authorities.

The motion is denied.

**SO ORDERED**, this the 5th day of February, 2019.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE