# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

JOSEPH THOMAS, et al.                                                      PLAINTIFFS

V.                                                      CAUSE NO. 3:18-CV-441-CWR-FKB

PHIL BRYANT, et al.                                                        DEFENDANTS

## ORDER

Before the Court is a motion to stay filed by two of the three defendants. After considering the record evidence, arguments, and applicable law, the motion will be denied.

**I.     Background**

In July 2018, the plaintiffs filed this § 2 case challenging the boundaries of Mississippi Senate District 22. Over the following months, all of the lawyers and parties worked diligently to gather evidence and marshal arguments—not just to resolve the case before the November 2019 election, but to have it resolved before the March 1, 2019 candidate qualification deadline.

Those efforts were successful. A trial was held in early February 2019. One week later, the Court notified the parties and the Legislature that the testimony and other evidence largely supported the plaintiffs' allegations.[1] A full memorandum opinion issued on February 16, 2019.

The Mississippi Legislature was provided the first opportunity to redraw the District and extend the March 1 qualification deadline.[2] It has so far declined to act and there is no progress on the horizon. Accordingly, alongside this ruling, the Court has issued an Order extending the

---

[1] For the record, the plaintiffs did not allege intentional racial discrimination. The question was whether the boundaries of District 22, the statistical evidence of two decades of voting patterns in that District, and the social and historical conditions of that area interacted "to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

[2] *But see* Emily Wagster Pettus, *No fast action on judge's redistricting order in Mississippi*, Assoc. Press, Feb. 14, 2019 ("Mississippi lawmakers are in no hurry to redraw a state Senate district after a judge ruled that the district dilutes black voting power. The Senate Elections Committee Chairman, Republican Kevin Blackwell of Hernando, told The Associated Press on Thursday that he's waiting to see if the state will appeal the judge's order.").

qualification deadline for Districts 22 and 23 to March 15, 2019, and requiring the defendants to redraw Districts 22 and 23 in accordance with the plaintiffs' illustrative Plan 1. A separate Final Judgment will follow.

One dispute remains. Two out of the three defendants—the Governor and the Secretary of State—have appealed and argue that the Court's ruling should be stayed pending that appeal. The Attorney General has not appealed or joined in their motion.

## II. Legal Standard

The law governing motions to stay pending appeal is well-established:

> We consider four factors in deciding a motion to stay pending appeal: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. The first two factors . . . are the most critical.

*Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (quotation marks and citation omitted).

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks and citation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34 (quotation marks, citations, and brackets omitted).

"[T]he movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (citations omitted).

## III. Discussion

At the outset, it must be noted that the movants' brief presents an idiosyncratic view of the record. They say the plaintiffs' statistical expert arrived at inaccurate estimates, but they introduced no evidence to dispute his actual methodology, which is generally accepted in this Circuit. They complain that "the Court declared that black voters 'are less likely to have transportation options that facilitate voter turnout in odd-year elections.'" The Court wrote that because it was unrebutted trial testimony. Elsewhere, the movants speculate about whether the Census Bureau has ever "suggested that blacks are more likely to over-report their participation than whites." The time for speculation has passed.

The movants' strongest argument relies upon a series of voting cases instructing lower courts to be wary of changing the status quo "on the eve of an election." *Veasey*, 769 F.3d at 892, 894 (collecting cases).

In *Veasey*, the Fifth Circuit stayed a Texas district court ruling that would have affected statewide voter identification rules "just nine days before early voting." *Id.* at 892. "[I]t will be extremely difficult, if not impossible, for the State to adequately train its 25,000 polling workers at 8,000 polling places about the injunction's new requirements in time for the start of early voting on October 20 or even election day on November 4," the court reasoned. *Id.* at 893.

The principle of electoral caution is not limited to voter identification cases, but extends to redistricting controversies like ours:

> Further, in the apportionment context, the Supreme Court has instructed that, in awarding or withholding immediate relief, a court is entitled to and *should* consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. Accordingly, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately

3

> effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid.

*Id.* (quotation marks, citations, and brackets omitted). The bottom line is that district courts must recognize "the Supreme Court's hesitancy to allow . . . eleventh-hour judicial changes to election laws." *Id.* at 895.

Given these authorities, a stay pending appeal would likely be appropriate if voting in District 22 had started or was imminent. A stay would probably also be warranted if the Court was ruling on this case in September or October, on the cusp of the November general election. That is not the situation. We are months away from the primaries and months more away from the general election.

There are, in fact, quite a few differences between the *Veasey* line of cases and this matter. The plaintiffs have not brought a constitutional case of statewide reach, but instead filed a one-count suit identifying one problem in one of Mississippi's 52 Senate Districts. That problem can be remedied by moving 1.4% of Mississippi's 1,962 electoral precincts into an adjacent Senate District. The affected voters have the entire campaign season to get acquainted with the candidates, to the extent the candidates are not already known to them—this *is* Mississippi, after all. And moving these precincts will not affect the incumbents. The District 22 incumbent is not running for re-election for other reasons, while the District 23 incumbent is favored to win under any redrawn map and may even run unopposed.

The available evidence regarding "the mechanics and complexities of state election law[]" also does not justify a stay. The State's elections consultant provided an affidavit explaining that any affected counties would need time to move the affected precincts. She stated that "the timeline for election creation is generally about 55 days before an election day." The Assistant Secretary of State for the Elections Division provided an affidavit stating that the

official ballot for the primary elections must be finalized by June 17, 2019. Before that can happen, the candidates must be determined to be qualified and approved by their political party. That takes some time. How much time, the record does not reveal.

This evidence likely would have carried more weight if the plaintiffs had asked for broader relief. What the affiants did not know (and could not have known at the time) was that so few precincts would move, and that the qualification deadline would be extended by only 14 days. There is no evidence in these affidavits or elsewhere that such modest steps will harm the efficient conduct of the 2019 election cycle. The Court simply cannot agree with movants' counsel's assertion that this will result in "chaos."

The traditional factors also weigh against issuance of a stay.

First, the movants have not made a strong showing that they are likely to succeed on appeal. Two of the three *Gingles* factors were uncontested at trial and the third heavily favored the plaintiffs once the defendants' expert was subjected to cross-examination. The movants' statute of limitations defense lacks support in the case law, while the laches argument can (at best) knock out one of the three plaintiffs. The movants' textual reinterpretation of 28 U.S.C. § 2284(a) has never been adopted by a single court and runs contrary to the leading treatise on textualism. The Court's memorandum opinion explained at length how the movants' remaining legal arguments are inconsistent with the binding case law of this Circuit.

The final three factors are collectively in equipoise. Here, as is so often the case, "both sides cloak themselves in the mantle of irreparable harm," "claim the public interest supports them," and argue "that their prospective harm is greater than the harm to the other." *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 894 (5th Cir. 2012).

The second factor supports the issuance of a stay. It was only last year that the Supreme Court found that "the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018).[3] Without a stay, Mississippi will not be able to implement the District 22 map it previously enacted into law.

The third factor cuts the other way, since a stay would substantially injure the other parties to this litigation. In *Veasey*, the Fifth Circuit's discussion of this prong reaffirmed that "the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." 769 F.3d at 896 (quotation marks, citation, and brackets omitted). Here, the evidence showed that the plaintiffs and other African-Americans in District 22 were unable to vote their candidate of choice into office in the 2003, 2007, 2011, and 2015 election cycles because of the structure of the District. Given the importance of voting and the years that have elapsed without the electoral opportunity intended by § 2, the better course of action seems to be to not injure the plaintiffs for another election cycle.

Finally, the public interest factor is inconclusive. In *Nken*, an asylum case in which the petitioner sought a stay of removal, the Supreme Court observed that "[o]f course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm," just as "[t]here is always a public interest in prompt execution of removal orders." 556 U.S. at 436. And in *Perez*, last year's redistricting case, the Court wrote that the district court "should have respected the legislative judgments embodied in" the State's duly enacted maps, before adding, critically, "to the extent allowed by

---

[3] The Fifth Circuit has articulated this point somewhat differently, writing that "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey*, 769 F.3d at 895 (quotation marks and citation omitted).

The *Veasey* court also found that "the State has a significant interest in ensuring the proper and consistent running of its election machinery." *Veasey*, 769 F.3d at 896. As discussed above, the evidence in this case does not show that amending District 22's boundaries will impair this legitimate interest.

6

the Constitution and the VRA." 138 S. Ct. at 2316 (citation omitted). These authorities confirm that it is difficult to draw hard and fast rules about where the public interest lies in these cases, since we should generally presume the government's lawful conduct and nevertheless order appropriate remedies where the government has run afoul of federal law. The more salient issue on this factor may again be "the timing" of the court's order in relation to the election, given the public interest in avoiding disruption on the eve of an election. *Veasey*, 769 F.3d at 895–96.

Having considered these factors, which to some extent favor a stay and in other, greater respects, counsel against a stay, the undersigned is not persuaded that a stay should issue.

## IV. Conclusion

The thread running through the defendants' theory of the case, from their laches defense to the movants' stay application, has been prejudice. *We are too close to the next election*, they say. This is a basic § 2 case, though, and the judiciary is generally capable of resolving a "a run-of-the-mill case" filed 16 months before a general election. *Id.* at 892.

This Court has considered the record evidence, the limited scope of the remedy, and the practical impact this ruling will have on county and state election officials trying to do their jobs with fidelity to the law and the people they serve. It sees a small-bore remedy and months of time in which to implement it. The motion for stay pending appeal is, therefore, denied.

**SO ORDERED**, this the 26th day of February, 2019.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE