## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

JOSEPH THOMAS, et al.                                          **PLAINTIFFS**

V.                                          **CAUSE NO. 3:18-CV-441-CWR-FKB**

TATE REEVES, et al.                                          **DEFENDANTS**

## <u>ORDER</u>

Before the Court is Plaintiffs' motion for attorneys' fees, expenses, and costs. Docket No. 108. The matter is fully briefed and ready for adjudication. On review, the motion will be granted in part and denied in part.

## I.      Factual and Procedural History

Plaintiffs Joseph Thomas, Vernon Ayers, and Melvin Lawson filed a Complaint on July 9, 2018, and an Amended Complaint on July 25, 2018, against the Governor, Secretary of State, and Attorney General of Mississippi.[1] They sought a judgment declaring that the lines of state Senate District 22 violated Section 2 of the Voting Rights Act because they diluted the voting rights of Black voters.

This Court ordered discovery to commence and set a trial for February 6, 2019. Docket No. 28. Defendants then filed a motion for summary judgment on September 4, 2018, Docket No. 19, and a motion for referral to a three-judge panel, Docket No. 44, both of which were ultimately denied. *See* Docket Nos. 51 and 61. A bench trial was held on February 6 and 7, 2019.

On February 13, 2019, the Court held that the boundaries of District 22 violated Section 2 of the Voting Rights Act. Docket No. 60. This Court issued an Order that day informing the parties

---

[1] The case originally proceeded against Governor Phil Bryant, Secretary of State Delbert Hosemann, and Attorney General Jim Hood. After Mississippi's 2019 elections, the defendants are Governor Tate Reeves, Secretary of State Michael Watson, and Attorney General Lynn Fitch. *See* Fed. R. Civ. P. 25(d).

and the Mississippi Legislature that the evidence supported the Plaintiffs' allegations and that the Legislature was entitled to the first opportunity to redraw District 22. *Id.* at 1. This invitation was repeated in a February 16, 2019, Memorandum Opinion and Order addressing the merits of the case in depth. Docket No. 61. After additional motion practice and a telephone call regarding remedies, a Final Judgment was entered for the Plaintiffs on February 26, 2019. Docket No. 76.

Before the Legislature acted, the Defendants filed two appeals seeking stays of this Court's Memorandum Opinion and Final Judgment. The Fifth Circuit denied both stays. *Thomas v. Bryant*, 775 F. App'x 421 (5th Cir. 2019) (*"Thomas I"*); *Thomas v. Bryant*, 919 F.3d 298 (5th Cir. 2019) (*"Thomas II"*). In *Thomas II*, the Fifth Circuit held that the Legislature and the Governor had "until April 3 to remedy the Section 2 violation." 919 F.3d at 313.

On March 26, 2019, the Legislature implemented a new remedial plan, Miss. Legis., J.R. 202 (2019), but expressly stated that the resolution would be repealed if Defendants prevailed in the merits appeal of this Court's judgment. Docket No. 99-1 at 24-25. On August 1, 2019, the Fifth Circuit affirmed. It held that the boundaries of District 22 violated Section 2 of the Voting Rights Act and recognized the Legislature's remedial plan as "the operative district" for the upcoming elections. *Thomas v. Bryant*, 931 F.3d 455 (5th Cir. 2019) ("*Thomas III*").

On September 23, 2019, the Fifth Circuit *sua sponte* ordered that the case be heard en banc, setting the argument for January 2020. Before the argument, however, Mississippi held its 2019 elections under the remedial plan. Plaintiff Thomas won the Democratic primary and the November 2019 general election.

After oral argument before the en banc Fifth Circuit, that court held that the case was now moot because there would not be another election in District 22 until 2023, by which time the 2020 Census would have resulted in new lines being drawn. Thus, the court declared the case moot and

vacated this Court's judgment. *Thomas v. Reeves*, 961 F.3d 800, 801 (5th Cir. 2020) ("*Thomas IV*") (en banc).

The present motion followed. Plaintiffs seek a fee award of $510,568.25 and $79,503.44 in expenses for a total of $590,071.69. These sums cover the period of time from the beginning of the case through oral argument in front of the Fifth Circuit merits panel on June 11, 2019, before the case became moot.

## II.     Attorneys' Fees

### A.     Prevailing Party Status

Plaintiffs bear the burden of proving that they are "prevailing parties" to qualify for a fee award under 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e). *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "A 'prevailing party' is one who has been awarded some relief by a court." *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001); *see, e.g., Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980).

The Fifth Circuit has established this standard for prevailing party status: "the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002). "The touchstone of the prevailing party inquiry is the material alteration of the legal relationship of the parties." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (2007).

Defendants assert that "vacatur, in and of itself, precludes the Plaintiffs from having prevailed." Docket No. 113 at 2. They cite no cases for that conclusion.[2]

In fact, the Fifth Circuit has allowed attorneys' fees for prevailing parties in cases where the merits have been dismissed as moot. In *Nash v. Chandler*, for example, the court held that "[f]ees are allowable even though the injunction is dismissed as moot." 859 F.2d 1210, 1211 (5th Cir. 1988). And, in *Doe v. Marshall*, the Fifth Circuit vacated a preliminary injunction as moot, but still remanded the case for a determination of attorneys' fees, stating "a determination of mootness does not prevent an award of attorneys' fees on remand." 622 F.2d 118, 120 (5th Cir. 1980). In *Murphy v. Fort Worth Independent School District*, the Fifth Circuit vacated the district court's order as moot, and rather bluntly explained, "we have held repeatedly that 'a determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a prevailing party." 334 F.3d 470, 471 (5th Cir. 2003) (citing *Doe*, 622 F.2d at 120). Thus, it is plain that vacatur does not preclude the award of attorneys' fees. The key question here is instead whether the Plaintiffs are the prevailing party.

Defendants assert that Plaintiffs cannot be the prevailing party under *Sole v. Wyner*, allegedly because Plaintiffs have not achieved "enduring" relief. 551 U.S. 74, 86 (2007). However, in *Sole*, the Supreme Court found that the plaintiff was not a prevailing party, despite securing a preliminary injunction, because the district court later ruled for defendants on the merits. *Id.* at 85. The *Sole* Court ruled narrowly, holding "[w]e decide **only** that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case

---

[2] Several of the cases Defendants cite discuss only whether vacatur was appropriate. They do not state that vacatur prohibits the awarding of attorneys' fees. *See* Docket No. 113 at 2-3 (citing *United States v. Munsingwear*, 340 U.S. 36 (1950); *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994); *Deakins v. Monaghan*, 484 U.S. 193 (1988); *Camreta v. Greene*, 563 U.S. 692 (2011); and *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999)).

are ultimately decided against her." *Id.* at 86 (emphasis added). That holding does not apply here, where Plaintiffs prevailed on the merits.

Instead, the correct standard is "[i]f the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Ass'n*, 489 U.S. at 792.

In the present case, Plaintiffs are the prevailing parties. They have "obtain[ed] actual relief" in the form of a redrawn district. *Walker*, 313 F.3d at 249. Plaintiffs won on the merits in front of this Court, from motion practice through Final Judgment, and were affirmed by multiple Fifth Circuit panels. The Fifth Circuit ordered the Legislature to redraw Senate District 22 to comply with § 2 of the Voting Rights Act. This relief "materially alter[ed] the legal relationship between the parties" and "modifie[d] the defendant's behavior in a way that directly benefits the plaintiff at the time of judgment or settlement." *Id.* The new district lines were used in two elections, the most obvious result of which is that Plaintiff Thomas was elected as the representative of District 22. The benefit Plaintiffs acquired remains, as Plaintiff Thomas remains the senator from the district, despite the vacatur by the Fifth Circuit.

It's as simple as this: Plaintiffs claimed that the currently configured Senate District diluted the voting strength of African Americans and deprived them the equal opportunity to elect the candidate of their choice. This Court and the Fifth Circuit agreed. New elections were held under a reformed district, and the citizens elected the candidate of their choice. Plaintiffs have prevailed.

Thus, having met all three prongs of the Fifth Circuit's test for prevailing party status, Plaintiffs will be the prevailing party in this matter and are entitled to their attorneys' fees.

**B.      Attorneys' Fees**

In evaluating a request for attorneys' fees, the Court first calculates the "lodestar," defined as "the number of hours reasonably expended on this litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Abner v. Kansas City Southern Ry. Co.*, 541 F.3d 372, 376-77, 383 (5th Cir. 2008). "[T]he lodestar method yields a fee that is presumptively sufficient." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citations omitted).

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed," *Hensley*, 461 U.S. at 433, and "bears the burden of showing reasonableness," *Abner*, 541 F.3d at 377. "[T]he burden is on the applicant to produce satisfactory evidence . . . that the reasonably requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quotation marks and citation omitted). "Charges for excessive, duplicative, or inadequately documented work must be excluded." *Id.* (citation omitted).

The Court then adjusts the lodestar upward or downward by considering the 12 factors set forth in *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Abner*, 541 F.3d at 376-77. The "most critical" of these factors is "the degree of success obtained." *Id.* at 377. As a part of this analysis, the Court "explain[s] how each of the *Johnson* factors affects its award," although its discussion need not be meticulously detailed to survive appellate review." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008); *see Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir. 1990) ("[W]e will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions on fee awards consume more

judicial paper than did the cases from which they arose.") As the Supreme Court has explained, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

The lodestar calculations Plaintiffs seek are set forth in the following table:

| Timekeeper | Proposed Hourly Rate | Hours Billed | Lodestar |
|---|---|---|---|
| Rob McDuff | $450 / $225 (travel) | 368.8 / 4.5 (travel) | $166,972.50 |
| Ellis Turnage | $425 | 38.25 | $16,256.25 |
| Jon Greenbaum | $450 | 219.3 | $98,685 |
| Ezra Rosenberg | $450 | 97.5 | $43,875 |
| Arusha Gordon | $275 | 213.2 | $58,630 |
| Pooja Chaudhuri | $250 | 398.5 | $99,625 |
| Jason Enos | $110 | 241.13 | $26,524.50 |
| **Total** | | | **$510,568.25** |

### 1.    Reasonable Hourly Rate

For hourly rates, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Id.* The rate applies regardless of whether Plaintiffs are represented by private or non-profit counsel. *Id.* at 895.

In the present case, Plaintiffs seek a fee award of $510,568.25 and $79,503.44 in expenses for a total of $590,071.69, covering the period from the beginning of the case through the time of the oral argument in front of the Fifth Circuit merits panel on June 11, 2019. Plaintiffs have asked for the following hourly rates: $450 for attorneys Rob McDuff, Jon Greenbaum, and Ezra Rosenberg; $425 for Ellis Turnage; $275 for attorney Arusha Gordon; $250 for attorney Pooja

7

Chaudhuri; and $110 for social scientist Jason Enos. Defendants claim that the rate should be $375 for McDuff, Greenbaum, Rosenberg, and Turnage; $225 for Gordon; and $200 for Chaudhuri. Defendants do not comment on Enos's proposed rate.

     **a.**   **Rob McDuff**

Rob McDuff was co-lead counsel in this case, along with Jon Greenbaum. McDuff is an attorney practicing in Jackson, Mississippi, with four decades of experience in complex litigation in voting rights. He maintains a private practice and is the director of the impact litigation project for the Mississippi Center for Justice (MCJ). Prior to opening his own practice in 1992, McDuff was an attorney with the Lawyers' Committee for Civil Rights Under Law in Washington, D.C., a member of the faculty of the University of Mississippi Law school, and an attorney with the civil rights firm Ratner & Sugarmon in Memphis. He graduated from Harvard Law School in 1980.

McDuff avers that he "has more experience in voting rights cases than any other particular type of case." Docket No. 108-1 at 3. McDuff has argued four cases in the United States Supreme Court, two of which were redistricting cases. He also has argued and litigated a number of redistricting cases in the courts of appeals and district courts. He goes on to say, "I believe I am one of the three most experienced lawyers in Mississippi at litigating voting rights case on behalf of minority voters. The other two are Ellis Turnage, who was a co-counsel in this case, and Carroll Rhodes." *Id*. at 5. Those assertions are not challenged or refuted by the defendants.

McDuff states, "[f]or those who can afford it, my hourly rate is $500 per hour." Docket No. 108-1 6-7. But he notes that in this case, he is seeking a rate of $450 per hour of work and $225 per hour of travel. McDuff has billed 368.8 hours in work time and 4.5 hours in travel time. In a declaration, Margaret Oertling Cupples, the managing partner of the Jackson office of Bradley LLP, states "[g]iven his experience, reputation, and nationally-recognized skill, and in light of my

experience concerning the hourly rates charged by other attorneys with more than 35 years of experience, I believe a rate of $550 per hour for work performed by Rob McDuff in this case is reasonable and within the market range." Docket No. 108-5 at 2.

The Court finds that an hourly rate of $450 is reasonable for an attorney of McDuff's skill and experience. The run of cases indicate, if anything, that he is seeking a below-market rate in this matter. *See, e.g.*, *Jackson Women's Health Org. v. Currier*, No. 3:12-CV-436-DPJ-FKB, 2019 WL 418550, at *6-7 (S.D. Miss. Feb. 1, 2019) (awarding a rate of $550 to a lawyer who had been admitted to the bar in 1999 and a lawyer with 35 years of practice experience); *McWilliams v. Advanced Recovery Systems, Inc.*, No. 3:15-CV-70-CWR-LRA, 2017 WL 2625118, at *2 (S.D. Miss. June 16, 2017) (referring to a 2016 affidavit from a former Mississippi bar president stating that customary and reasonable rates charged by Mississippi lawyers in complex litigation are from $500 to $550 per hour);[3] *United States ex rel. Rigsby v. State Farm Fire and Co.*, No. 1:06-CV-433-HSO-RHW, 2014 WL 691500, at *14 (S.D. Miss. Feb. 21, 2014) (noting "customary and reasonable rates currently charged by litigation partners in Mississippi firms and/or regional firms with offices in Mississippi are in the $400–$500 range"). Accordingly, for this matter, McDuff will receive the $450 an hour he seeks.

**b.    Jon Greenbaum**

Jon Greenbaum is the Chief Counsel of the Lawyers' Committee, a position he has held since 2010. He graduated from law school 27 years ago and has over two decades of experience

---

[3] In that affidavit, the former bar president explained that in "complex, high stakes or high risk litigation" the reasonable rate is $500 to $550 hour. *See Jones v. Singing River Health Sys.*, No. 1:14-CV-447-LG-RHW, 2016 WL 3248449, at *2 (S.D. Miss. June 10, 2016). No doubt this litigation was complex and high stakes. "The case," as one judge involved noted, "presents several *extraordinary* issues." *Thomas II*, 919 F.3d at 325 (Clement, J., dissenting) (emphasis added). Proof of those points is that the State specially retained some very highly skilled lawyers who litigated this case with vigor through various procedural moves at warp speed and presented arguments which caused the members of the appellate three-judge panel to engage in spirited debate. *Compare id.* at 304-08 *with* 321-25 (Clement, J., dissenting). The State's thinly veiled assertion that the prevailing rate ought to be limited to what some lawyers may have received in some very simple § 1983 cases is rejected.

in litigating Section 2 vote dilution cases. Before becoming Chief Counsel of the Lawyers' Committee, Greenbaum was the Legal Director and, before that, the director of the Voting Rights Project. Prior to his time at the Lawyers' Committee, Greenbaum was a senior trial attorney in the Voting Section of the Civil Rights Division at the U.S. Department of Justice. He has litigated voting rights cases before the Supreme Court, the courts of appeals, and many district courts. He serves as the co-chair of the Voting Rights Task Force of the Leadership Conference on Civil Rights.

Greenbaum performed most of his work during the discovery and the trial phase. He also supervised other attorneys throughout this litigation. He is seeking an hourly rate of $450 and has charged 219.3 hours.

Greenbaum has submitted affidavits from lawyers in this area stating that the market rate for a lawyer of his extensive voting rights experience would be in the $550 range. *See* Docket No. 108-1 at 7. Margaret Cupples declared that "[f]or lawyers with 25 years of experience or more, a rate of $450 would be within the [market] range" for Mississippi attorneys. Docket No. 108-5 at 2.

Given the evidence and the above cases, the Court finds that a rate of $450 for an attorney of Greenbaum's skill and experience is reasonable.

### c.   Ezra Rosenberg

Ezra Rosenberg has been the Co-Director of the Voting Rights Project of the Lawyers' Committee since July 2015. In this role, he oversees all litigation matters in the Voting Rights Project, and has worked on 56 voting rights cases, including litigating cases before federal courts of appeals and district courts. Prior to the Lawyers' Committee, Rosenberg worked at the New

Jersey Public Defender, the Land and Natural Resources Division of the Department of Justice, and a number of private law firms. He has been practicing law since 1974.

Rosenberg mostly contributed during the appellate phase of this litigation. For his work, Plaintiffs are requesting an hourly rate of $450 for 97.5 hours billed, for a total lodestar calculation of $43,875.

Rosenberg has submitted affidavits from lawyers in this market stating that the market rate for a lawyer of his extensive voting rights experience would be in the $550 range. *See* Docket No. 108-1 at 7. As above, the Court finds that a rate of $450 for an attorney of Rosenberg's experience is reasonable in a complex case like this one.

### d.    Ellis Turnage

Ellis Turnage is an attorney with a solo practice in Cleveland, Mississippi. He graduated law school and was admitted to practice law in 1982. He has worked on voting rights cases his entire career, including serving as counsel or co-counsel for plaintiffs in 35 voting rights cases in front of federal district courts in Mississippi and the Fifth Circuit, and 45 voting rights cases which were settled without a trial or which did not generate a written opinion.

Turnage is asking for $425 per hour. In his affidavit, he states that he has "always accepted voting rights cases on a non-fee generating basis." Docket No. 108-4 at 11. However, he says, his "regular hourly rate for legal services billed to paying clients is $425.00 per hour." *Id.* at 12. He is requesting compensation for 38.25 hours for a lodestar of $16,256.25.

The Court finds that a rate of $425 for an attorney with nearly 40 years of experience, specializing in voting rights cases, is reasonable.[4]

---

[4] Turnage only sought a rate of $425. For that reason, the Court will award this below-market rate. Turnage's skill, experience, and reputation, which matches McDuff's, would justify a rate of $450.

### e.      Arusha Gordon

Arusha Gordon is an attorney with the Lawyers' Committee. She graduated law school in 2013 and has been a member of the California State Bar since 2013 and the District of Columbia Bar since 2016. She has experience in voting rights litigation, including taking the lead on several voting rights cases. She is seeking a rate of $275.

The Cupples declaration states that "[f]or lawyers with seven years of experience, a rate of $275 would be within the [market] range" for Mississippi attorneys. Docket No. 108-5 at 2.

In civil rights litigation resolved in 2019, Chief Judge Jordan awarded an hourly rate of $350 to an attorney with five years of relevant experience. *See Currier*, 2019 WL 418550, at *7. Thus, the Court will find a rate of $275 to be reasonable.

### f.      Pooja Chaudhuri

Pooja Chaudhuri is also an attorney with the Voting Rights Project of the Lawyers' Committee. She graduated from law school in 2016 and has been a member of the California State Bar since 2017 and the District of Columbia Bar since 2018. She had recently joined the Voting Rights Project when she started working on the case, but has prior civil rights litigation experience. She is seeking an hourly rate of $250.

The Cupples declaration states that "[f]or lawyers with four years of experience, a rate of $250 would be within the [market] range" for Mississippi attorneys. Docket No. 108-5 at 2.

The Court finds the requested fee of $250 to be slightly high given the case law. *See Currier*, 2019 WL 418550, at *7 (awarding $225 to an attorney with relevant experience but who had only been a member of the bar for fewer than two years when she started the case). Pursuant to that ruling, Chaudhuri will receive $225 for her work in this matter.

### g.    Jason Enos

Jason Enos is a social scientist employed by the Lawyers' Committee. According to the Plaintiffs, "Jason Enos played a critical role in this case analyzing complex data, precinct changes, boundary changes, and compiling data for Plaintiff's statistical expert Max Palmer." Docket No. 109 at 16-17. He proposes to charge $110 for his work.

Defendants have not objected to Enos's proposed rate, and the case law indicates that his proposed rate is more than reasonable, as "[t]his Court has found a rate of $124 per hour reasonable for paralegals engaged in complex litigation." *Lamar Co., LLC v. Harrison Cty. Sch. Dist.*, No. 1:17-CV-206-LG-RHW, 2017 WL 6452774, at *3 (S.D. Miss. Dec. 18, 2017); *see McWilliams*, 2017 WL 2625118, at *5 (awarding a rate of $112.50 for paralegal tasks). Thus, the Court will award the rate of $110.

### 2.    Number of Hours

Where, as in this case, if "more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Walker v. United States HUD*, 99 F.3d 761, 768 (5th Cir. 1996).

Plaintiffs note that they have "already heavily discounted hundreds of hours of time recorded on their books so as to account for inefficiencies, overstaffing, and excessive time." Docket No. 116 at 11-12. Among other billing reductions, (1) they are not seeking an award for work done by Waters & Kraus, LLP; (2) Mississippi Center for Justice declined to seek reimbursement of the hours of attorney Beth Orlansky, who spent approximately 30 hours on the case, but did not play an essential role; (3) Lawyers' Committee is not seeking fees on behalf of law fellows Ryan Snow and Anastasia Eriksson, who provided legal research and drafting support,

and a law clerk who conducted discrete legal research,[5] and (4) Lawyers' Committee deducted "time spent by Ms. Chaudhuri on work that was necessary, but could be deemed clerical; and twenty-five percent of Mr. Enos's time." *Id.* at 12 n.9. In total, the Lawyers' Committee states that it declined to bill 335.37 hours spent on this case. Docket No. 108-2 at 16. Defendants nevertheless object to the hours sought.

### a.   Responses to Motions to Stay

Defendants claim that "[b]ased on analysis of time sheet, [they] have identified 134.2 *directly* duplicated hours that the Plaintiffs' counsel expended on their responses to the Defendants' Motions to Stay." Docket No. 113 at 25. Defendants have encouraged the Court to exclude all of those hours.

Plaintiffs respond that this time was spent on four briefs—responses to two Motions to Stay filed in this Court and two appeals to the Fifth Circuit of this Court's stay orders. Additionally, Plaintiffs have already discounted hours for these briefs. Two of the entries Defendants highlight as excessive on Chaudhuri's timesheet have been reduced. *See* Docket No. 112-1 at 43. Plaintiffs also assert that the briefs required addressing complex issues and factual developments that warranted the amount of time spent.

The Court notes that the entries claimed to be duplicative here include the vast majority of hours billed for the briefs. It does not make sense to exclude all of the contested hours. Instead, based on its independent review of the time records, the Court will reduce Gordon's hours on February 20, 2019 by 2.8 hours. She and Rosenberg both billed time on that day to review and begin work on the opposition to stay, possibly rendering Gordon's time duplicative.

---

[5] Clearly their work was compensable at the market rate. *See Missouri v. Jenkins*, 491 U.S. 274, 289 (1989),

### b.     Depositions

Defendants then note that the timesheets reveal that at least four of the Plaintiffs' attorneys and their social scientist billed 49.92 hours for listening to or attending the same depositions. They highlight 20.1 hours of Jon Greenbaum's time in which he was participating, attending, taking, and defending depositions of various persons. *See* Docket No. 112-1 at 24. Defendants ask the Court to exclude the duplicative time.

Greenbaum responds that "when more than one Lawyers' Committee attorney attended a deposition, I discount a significant percentage of time individuals spent second or third chairing depositions." Docket No. 117 at 8; *see also id.* at 9 (describing the various deposition hours discounted). McDuff adds that he "listened in by telephone to some of the expert deposition and at least one of the lay depositions which was a useful expenditure of time in terms of [his] preparation for trial." Docket No. 108-1 at 6.

The Court observes that some of the time Defendants highlight as listening time includes time that Plaintiffs' counsel were actually defending depositions, not listening. *See* Docket No. 112-1 at 5 (McDuff 2.4 hours).

On review, the Court primarily finds most of the objection not well-founded. Defendants frequently highlighted deposition hours that Lawyers' Committee lawyers already reduced because counsel were in a passive role. *See, e.g.*, Docket No. 112-1 at 33, 38-39. Greenbaum even deducted 3.5 hours of his own time spent listening to the depositions of Plaintiffs Lawson and Ayers because other Lawyers' Committee attorneys were leading those depositions—despite Greenbaum's supervisory role over these attorneys rendering the time billable. Docket No. 117 at 12.

All in all, the Court finds that McDuff's time listening to Plaintiffs Ayers and Lawson's depositions is duplicative of the time billed by the other Plaintiffs' attorneys, as he was serving in a passive and non-supervisory role. Thus, the Court will deduct 3.5 hours from McDuff's billed time.

### c.      Summary Judgment Hearing

Defendants next complain that four lawyers for the Plaintiffs seek reimbursement for their attendance at the summary judgment hearing conducted on January 16, 2019. McDuff claims two hours, Greenbaum claims 1.3 hours, Gordon claims 1.5 hours, and Chaudhuri claims 1.5 hours. McDuff and Greenbaum were the only two lawyers to actually participate in the hearing. Defendants request that Gordon and Chaudhuri's hours be deducted.

The objection is overruled. Simple math shows that Plaintiffs have already deducted Gordon and Chaudhuri's hours during the hearing. On January 16, 2019, Gordon records 12.3 hours of work, 1.5 of which was spent at the oral argument; however, Plaintiffs are requesting only 6.5 hours of compensation for Gordon's work that day. *See* Docket No. 112-1 at 33. Similarly, the 1.5 hours that Chaudhuri recorded for the hearing also were deducted. *See* Docket No. 112-1 at 38. To the extent there is doubt, Greenbaum's supplementary affidavit confirms these deductions. Docket No. 117 at 12.

Since Gordon and Chaudhuri's hours already were deducted in this fee application, the Court declines to further deduct hours for the summary judgment hearing.

### d.      Trial

Defendants then take issue with the hours Plaintiffs' counsel have billed for the trial, noting that four lawyers and a social scientist attended the trial for the Plaintiffs. Defendants request that

the Court significantly discount the time claimed by Gordon, Enos, and Chaudhuri for their presence at trial.

Plaintiffs' counsel state in their declarations that at trial, Greenbaum and McDuff split up most of the witnesses, while Chaudhuri put on the testimony of one of the plaintiffs. Docket No. 108-1 at 6. Plaintiffs completely discounted the time Beth Orlansky of the MCJ spent at trial.

Here, Defendants' objections can be sustained in part. Though Chaudhuri did put on testimony of a witness at trial, her remaining involvement was often clerical – her time sheets describe preparing trial binders and exhibits, traveling to FedEx Office to print things, checking out technology, creating exhibits, and more. Of the 22.8 hours Chaudhuri billed for trial, the Court will award 7.7 hours at Chaudhuri's attorney rate, as she spent that time prepping witnesses, and the remaining 15.1 hours at a paralegal rate of $124 for her more clerical work. *See Lamar Co.,* 2017 WL 6452774, at *3 ("This Court has found a rate of $124 per hour reasonable for paralegals engaged in complex litigation.").

Gordon, in turn, did not examine any witnesses or make arguments at trial, and her timesheet lists only "trial and trial prep" for both days. This is not enough detail for the Court to determine reasonableness. Thus, the Court will deduct 16.8 from Gordon's time.

### e.     Oral Argument Before the Fifth Circuit

Defendants argue that Plaintiffs cannot recover fees for the merits oral argument in front of the Fifth Circuit. They cite *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990), for the proposition that "[s]ince the judgment below is vacated on the basis of an event that mooted the controversy before the Court of Appeals' judgment issued, [the plaintiff] was not, at that stage, a "prevailing party" as it must be to recover fees under § 1988." *Id.* at 472.

The comparison is inapt. In *Lewis*, the plaintiff had prevailed only on a summary judgment motion at the district court before the case was mooted. The Supreme Court "decline[d] to resolve" the question of whether the plaintiff should "be deemed a 'prevailing party' in the District Court, even though its judgment was mooted after being rendered but before the losing party could challenge its validity on appeal," as neither the district court or the court of appeals in the case had answered that question. *Id.* That is not the case here, where the plaintiffs prevailed at the district court and appellate levels before the Legislature acted. In addition, the Plaintiffs were at the Fifth Circuit at the invitation of the State protecting the judgment they had obtained at the district court.

As discussed above, in *Murphy v. Fort Worth Independent School District*, the Fifth Circuit vacated the district court's order as moot, yet still stated plainly, "we have held repeatedly that 'a determination of mootness neither precludes nor is precluded by an award of attorneys' fees." 334 F.3d at 471 (citing *Doe*, 622 F.2d at 120). Thus, fees are available.

The Court finds the time billed for this argument to be reasonable. Plaintiffs reduced their hours for travel time by the prevailing one-half standard. Additionally, though Chaudhuri did not participate in the argument, Plaintiffs state and the Court accepts that she was extremely familiar with the factual record and provided support sufficient to render the time billable.

### f.      Fee Application

The Court has discretion to include time spent on the fee application itself as part of the attorneys' fee award. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995).

Plaintiffs have used conservative estimates in their requested hours for this category; for example, Greenbaum billed only three hours for the fee application, despite being the main declarant for the Plaintiffs, being in charge of reviewing the Lawyers' Committee time sheets, and exercising billing judgment. This fee application included complicated issues of vacatur and

18

mootness and reasonably took substantial time to complete. The Court finds these hours to be reasonable.

> ### g.    Clerical Tasks

"Clerical work which does not require the skill of an attorney, but which an attorney nevertheless performs, may be compensated at a lesser rate than the attorney's customary rate." *Morrow v. Ingram*, No. 1:70-CV-4716-WJG, 2011 WL 815105, at \*3 (S.D. Miss. Mar. 1, 2011) (citing *Cruz v. Hauck*, 762 F.2d 1230, 1235 (5th Cir. 1985)). "Time spent on such tasks as letters to accompany motions for filing, review of lists and other routine matters should be compensated at the lesser rate as these are clerical duties that could have been handled by non-lawyers." *Id.* "Work of this nature is generally allowed at the paralegal billing rate," *id.*, and "[t]his Court has found a rate of \$124 per hour reasonable for paralegals engaged in complex litigation," *Lamar Co.,* 2017 WL 6452774, at \*3.

On January 15, 2019, Gordon billed four hours for "final printouts of all depo documents and organizing trial suitcase." Docket No. 108-2 at 33. Plaintiffs have reduced Gordon's time for this day by two hours. The Court will convert the other two hours for this task to paralegal hours, compensated at a rate of \$124.

On February 1, 2019, Gordon billed three hours for "exhibit prep" and 4.4 hours for "trial prep." Docket No. 108-2 at 33. The Court will also classify these hours as paralegal hours.

On February 5, 2019, Gordon billed 5.5 hours for "[p]repared all trial binders, exhibits, and additional printouts with PC." Docket No. 108-2 at 33. Plaintiffs have already reduced Gordon's hours on this day by two hours. The Court will classify the remaining 3.5 hours as paralegal hours.

The Court will also reclassify as paralegal work 1.7 hours Chaudhuri[6] billed on January 1, 2019, ("created a list of all documents to print for depos next week"); 1.1 hours she billed on January 14, 2019, ("final printouts of all depo documents and organizing trial suitcase")[7]; 7 hours on February 3, 2019, ("start to print Ps exhibits and place in binders with help of legal assistant (4.5); work on compiling trial binders for team (2.5)"), and 0.5 hours on May 8, 2019, ("worked with legal assistant to make hard copies at Kinkos and sent to the court and defendants (1.5)").[8]

### h.      Findings of Fact and Conclusions of Law

Defendants assert that Plaintiffs seek compensation for six timekeepers, billing a total of 118.9 hours, for the findings of fact and conclusions of law. They are incorrect.

The record shows that Plaintiffs' are seeking time for five attorneys, as they are not requesting reimbursement for Enos's time spent on this work. In addition, Plaintiffs have already deducted at least 15.1 of the hours Defendants' brief claimed to be duplicative. Docket No. 117-1 at 4. The Court finds that Plaintiffs have exercised billing judgment by reducing their hours by at least 12.6 percent on this task and thus will reimburse the requested hours.

### i.      Response to Appellants' Motion for Expedited Initial Appeal En Banc

Next, Defendants assert that Plaintiffs excessively billed 23.6 hours for four attorneys to prepare their Response to Appellants' Motion for Expedited Initial Appeal En Banc. The undersigned disagrees. The number of Plaintiffs' attorneys who worked on this filing is fewer than

---

[6] Defendants claim that "[t]wo attorneys, Ms. Gordon and Ms. Chaudhuri, request compensation for 47.2 hours of clerical and administrative tasks. This amounts to $12,222.50. Of those hours Ms. Chaudhuri billed 30.3 hours." Docket No. 113 at 29. By the Court's calculations, the Defendants have only highlighted 21 of Chaudhuri's hours and 16.9 of Gordon's hours as clerical, for a total of 37.9. The Court, in total, has reclassified 38.3 of Gordon and Chaudhuri's hours as clerical.

[7] Chauhan billed 3.5 hours for this activity, but Plaintiffs have already reduced her hours by 2.4 hours. *See* Docket No. 108-2 at 37.

[8] Chauhan billed 1.5 hours for this activity, but Plaintiffs have already reduced her hours by one hour. *See* Docket No. 108-2 at 45.

the five defense attorneys who worked on the en banc petition. The Court finds this time spent on such an unusual filing to be reasonable.

### j.      Fifth Circuit Briefing

Defendants also assert that the Plaintiffs' lawyers spent an inordinate amount of time preparing briefs before the Fifth Circuit, totaling 112.2 hours for 55 substantive pages of briefing. Plaintiffs respond that this time was spent on "all of the Fifth Circuit briefing, including the responses to the two appeals of the district court's stay order, the response to Defendants' motion to expedite, the merits brief, and the letter brief . . . ." Docket No. 116-1 at 6.

The Court has reviewed the timesheets. Plaintiffs have already reduced their hours for this briefing as they did not request reimbursement for the hours their legal fellow, Ryan Snow, spent on this briefing, which totals 16.5 hours. Given the breadth of issues Plaintiffs had to cover in this briefing, plus the reductions Plaintiffs have already made, the Court finds that these hours were a reasonable amount of time spent for this amount of briefing.

Thus, after the Court's deductions, the lodestar is as follows:

| Timekeeper | Hourly Rate | Hours Billed | Lodestar |
|---|---|---|---|
| Rob McDuff | $450 / $225 (travel) | 365.3 / 4.5 (travel) | $165,397.50 |
| Ellis Turnage | $425 | 38.25 | $16,256.25 |
| Jon Greenbaum | $450 | 219.3 | $98,685 |
| Ezra Rosenberg | $450 | 97.5 | $43,875 |
| Arusha Gordon | $275 | 180.7 (at $275) / 12.9 (at $124) | $51,292.10 |
| Pooja Chaudhuri | $225 | 373.1 (at $225) / 25.4 (at $124) | $87,097.10 |
| Jason Enos | $110 | 241.13 | $26,524.50 |
| **Total** | | | **$489,127.45** |

### 3.      *Johnson* Factors

The next step requires the Court to discuss each of the *Johnson* factors and adjust the lodestar upward or downward based on that discussion.

> The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-HSO-RHW, 2011 WL 6699447, at *3 (S.D. Miss. Dec. 21, 2011) (citation omitted). The "most critical" of the *Johnson* factors corresponds to (8), "the degree of success obtained." *Abner*, 541 F.3d at 377.

"The United States Supreme Court has stated that many of the *Johnson* 'factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Penthouse Owners*, 2011 WL 6699447, at *4 (quoting *Hensley*, 461 U.S. at 434 n.9).

This case is no different. Factors (1), (2), (3), (5), (8), (9), and (12) are already subsumed into the lodestar. None of them warrant an upward or downward adjustment. Factors (4), (6), (7), (10), and (11) are less relevant to this case or have no bearing on the fee award.

Thus, the Court concludes that the lodestar should not be adjusted based on any of the *Johnson* factors.

## III.   Expenses and Costs

Plaintiffs, as the prevailing party, are entitled to reimbursement for reasonable expenses and costs.

"All reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable . . . because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). "[I]tems proposed by winning parties as costs

should always be given careful scrutiny." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir. 1995) (quoting *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235 (1964), *overruled on other grounds by Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)). Out-of-pocket expenses "must not be awarded when they are extravagant or unnecessary." *Curtis v. Bill Hanna Ford*, 822 F.2d 549, 553 (5th Cir. 1987).

It is the fee applicant's burden to demonstrate the reasonable and necessary nature of the expenses claimed. *See Miss. State Chapter Operation Push v. Mabus*, 788 F. Supp. 1406, 1423 (N.D. Miss. 1992).

The total expenses that Plaintiffs are requesting are as follows:

| Firm | Expenses Sought |
|---|---|
| Mississippi Center for Justice | $443.52 |
| Lawyers' Committee | $33,152.32 |
| Waters & Kraus LLP | $45,907.60 |
| **Totals** | **$79,503.44** |

### A.     Mississippi Center for Justice

Mississippi Center for Justice is asking for a filing fee and a gas reimbursement for Rob McDuff's travel. Defendants do not object to this cost request. The Court finds this request reasonable and awards $443.25.

### B.     Lawyers' Committee

Lawyers' Committee requests $15,834.78 in expenses, including $11,637.98 on travel and meals, $19.86 on delivery and courier expenses, $71.35 on office expenses, $239.13 in printing and duplications, and $4,227.70 in court costs. They are also seeking $17,317.54 for expert Bill Cooper's compensation, for a total request of $33,152.32.

We begin with Cooper's time and work. According to Greenbaum, "Mr. Cooper's analysis was necessary to establish *Gingles* 1 and totality of circumstances senate factor 5." Docket No.

23

108-2 at 18. Cooper's hourly rate is $150, and he billed 107.5 hours. His time was spent drafting two reports, being deposed, attending the Defendants' expert's deposition, and attending trial. Defendants do not object to Cooper's compensation.

Lawyers' Committee then seeks $100 reimbursement for Chaudhuri's *pro hac vice* fees. This Court has previously not awarded *pro hac vice* fees, finding them not reimbursable. *See Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR-FKB, 2017 WL 4228751 (S.D. Miss. Sept. 22, 2017); *see also Knauff v. Dorel Juvenile Grp., Inc.*, No. SA-08-CV-336-XR, 2010 WL 2545424, at *2 (W.D. Tex. June 21, 2010) (disallowing *pro hac vice* costs); *Smith v. Fresh Cut Floral & Catering, Inc.*, No. 3:07-CV-661-WHB-LRA, 2008 WL 4539630, at *2 (S.D. Miss. Oct. 7, 2008) (same). Thus, $100 will be deducted from the Lawyers' Committee's cost request.

Defendants then object to the $11,276.74 in "Travel & Meals" expenses. Lawyers' Committee requests travel expenses only for those attorneys and staff who it is also billing time for and asserts travel expenses are ordinarily paid by fee-paying clients. Lawyers' Committee has submitted extensive receipts detailing reasonable travel and meal charges. The Court will reimburse them for these costs. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003) ("[W]e have affirmed awards of out-of-pocket travel expenses as components of attorney's fee recoveries under § 1988.").

Defendants also object to Westlaw charges. However, Lawyers' Committee did not bill for Westlaw charges, so the Court will not deduct any costs for this objection.

The resulting cost award for Lawyers' Committee is $33,052.32.

### C.    Waters & Kraus, LLP

Attorneys at the Waters & Kraus law firm—Caitlyn Silhan, Peter Kraus, Charles Siegel, and Sally Bage—served as co-counsel for the Plaintiffs in this case. They assert that they incurred

out-of-pocket expenses totaling $45,907.60 in pursuing claims on behalf of Plaintiffs. The expenses include fees for Plaintiffs' expert witness, Maxwell Palmer; legal research fees; travel expenses for Sally Bage; three *pro hac vice* filing fees; printing fees; and conference call fees.

Defendants object to all costs claimed by Waters & Kraus, LLP, except for Palmer's expert fees, because they assert that "[n]one of the lawyers from Waters & Kraus participated in any of the proceedings in this matter, and there is no evidence of their contribution to the Plaintiffs' presentation of their case." Docket No. 113 at 32. Plaintiffs respond that "Waters & Kraus were co-counsel—they advised on the selection and retention of expert witnesses, reviewed documents, and conducted legal research—ultimately contributing to the success of the case." Docket No. 116 at 13-14. The Court declines to penalize Plaintiffs for exercising billing judgment and not seeking attorneys' fees for Waters & Kraus by precluding them from reimbursement for reasonable expenses.

As stated above, *pro hac vice* fees are not reimbursable. Thus, the Court will deduct $300 from their fee request. Defendants also object to the expenses for Westlaw ($298.90) and PACER ($62.10). "[T]here is some debate whether PACER fees recoverable *as costs*." *Currier*, 2019 WL 418550, at *12; *see Zastrow v. Hous. Auto M. Imports Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017) (citing *Giner v. Estate of Higgins*, No. 11-CV-126, 2012 WL 2397440, at *5 (W.D. Tex. June 22, 2012) (collecting cases)). However, courts can reimburse expenses that the firm customarily charges to its clients. *See Currier*, 2019 WL 418550, at *11-12; *see also Veasey v. Abbott*, Docket No. 1211 at 32, No. 2:13-CV-193 (S.D. Tex. May 27, 2020) (noting that legal research expenses, including those for Westlaw and PACER, are reimbursable "so long as the research cost is in fact paid by the firm to a third-party provider and is customarily charged by the

firm to its clients"). Seeing that these expenses are *de minimis* and Waters & Kraus has stated that it normally charges clients for these items, the firm may be reimbursed for these expenses.

Plaintiffs have not explained the need for Sally Bage's attendance at the Defendants' Motion for Summary Judgment, so $321.55 will be deducted from Waters & Kurth's expenses. The remaining items—printing fees and conference call fees) are *de minimis* and will be reimbursed.

The resulting reimbursable sum for Waters & Kurth is $45,286.05.

Thus, the expenses and costs the Court will award are as follows:

| Firm | Expenses Sought |
|------|-----------------|
| Mississippi Center for Justice | $443.52 |
| Lawyers' Committee | $33,052.32 |
| Waters & Kraus LLP | $45,286.05 |
| **Totals** | **$78,781.62** |

## IV.  Conclusion

The Supreme Court says "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox*, 563 U.S. at 838. It is not clear if that goal was accomplished here. A case that warranted a 32-page Memorandum Opinion has turned into a fee dispute requiring a 26-page Order. No line item was too minute to draw an objection. But the bottom line is that almost none of the hourly rates requested were excessive, almost none of the hours sought were duplicated once the Plaintiffs exercised billing judgment, and the final adjusted fee is reasonable.

Therefore, the motion for attorneys' fees is granted in part and denied in part. A reasonable award in this case is $567,909.07. Interest at the federal rate of 0.07% shall accrue from the date of the judgment until paid. 28 U.S.C. § 1961.

**SO ORDERED**, this the 11th day of February, 2021.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE